Robinson, J.
 

 Plaintiff in error the Western Reserve Steel Company is the owner of the premises described in the petition, located in the village of Cuyahoga Heights. Plaintiff in error H. R. Fishel is in possession of the premises, under a contract for the purchase thereof. The premises were purchased by the Western Reserve Steel Company from a trustee in bankruptcy of the estate of the Hunter Crucible Steel Company, bankrupt, pursuant of an order of sale issued to such trustee by the United States District Court. After the Western Reserve Steel Company had purchased and received a deed from such trustee for the premises, and after H. R. Fishel had gone into possession under his contract, the plaintiffs in error made application to the village of
 
 *546
 
 Cuyahoga Heights and the city of Cleveland, and the other defendants in error, as officers, respectively, of the village and city, for a supply of water to be used on the premises, which was refused for the reason that the Hunter Crucible Steel Company had failed to pay for water consumed by it on the premises, in the sum of $4,546.80, prior to its becoming a bankrupt.
 

 The village of Cuyahoga Heights secures water for the use of itself and its public from the city of Cleveland, under a contract entered into between such municipalities, which contract contains the following clause:
 

 “It is also agreed between the parties hereto, that if any consumer in the village, who shall pay direct to the city, neglects or refuses to make the payments as required, or violates any of the herein mentioned agreements, or any of the ordinances, rules and regulations for the management and protection of the division of water of the city, the city shall have the right to shut off the water from such consumer without any preliminary notice, and in case the shutting off of the water supply does not compel payment as required, or compliance with the ordinances, rules and regulations above referred to, the village shall pay to the city all claims for water or for labor and material furnished to or for any damage caused to the city by any such consumer in the village, within thirty days after the said village has been requested so to do by the city.
 

 “In the event the village should so pay such claims, or should so be requested to pay such claims, then and in that event the city shall not turn on the water for such consumer, or for any one holding title
 
 *547
 
 or possession' through, or from him, unless the city shall receive notice in writing from the village consenting to the turning on of such water. If the city shall so turn on the water without such notice, the claim of the city shall be null and void, and if the claim shall have been paid by the village, the city shall repay the village the amount of the payment, so made.”
 

 Pursuant to such provisions of the contract, the village of Cuyahoga Heights had paid to the city of Cleveland the amount of the unpaid water bill of the Hunter Crucible Steel Company.
 

 Neither the city nor the village, prior to the purchase of the premises by the plaintiffs in error, had asserted or perfected a lien upon the premises for the unpaid water rent of the Hunter Crucible Steel Company, and no lien upon the premises had been created by contract, and, unless such unpaid water rent became a lien upon the premises by operation of law, no lien existed.
 

 The plaintiffs in error, prior to the purchase of said premises and prior to their contract between themselves, had no notice or knowledge that the Hunter Crucible Steel Company had not paid for the water used by it' upon the premises.
 

 Plaintiffs in error offered to deposit with the defendants in error, or either or any of them, such sum of money as might reasonably be required as security for the prompt and punctual payment of all water bills incurred by them with respect to such premises, and offered to comply with all reasonable rules and regulations applicable to them.
 

 We are cited to Sections 3957, 3958, and 4361, General Code, and are asked to find from those sec
 
 *548
 
 tions the existence of a statutory lien upon the premises at the time the water rent accrued and while owned by the Hunter Crucible Steel Company. These sections empower the director of public service or the board of trustees of public affairs to assess water rents against the property upon which water has been furnished and to collect such assessment in the same manner as other city taxes. They have application to municipalities owning and operating municipal water plants and confer unusual and exclusively statutory power upon certain designated officials. The power so conferred has no common-law basis, nor does it grow out of any inherent municipal power. They create in the municipality a power, which, but for the existence of the statute, it would not have, and a liability upon property, which, but for the existence of the statute, would not obtain. They will therefore be construed strictly and will not include any property or any situation which does-not fall within the exact terms of the statute.
 

 The village does not own or operate its own municipal water plant. Off the record we are informed that it owns the distributing mains. The relationship between the public of the village and the city, owner and operator of the plant, is analogous to that of consumer and privately owned public utility, and has no element of sovereignty and citizenship. The village territory is wholly outside the city limits and the city’s jurisdiction. The statutes cannot be construed to create a lien in favor of either the city or the village in the instant case.
 

 The record does not disclose the nature of the individual contract between the city and the Hunter Crucible Steel Company, and nothing is claimed
 
 *549
 
 therefor. The unpaid water rent was, in so far as this record discloses, a simple indebtedness of the Hunter Crucible Steel Company to the city, payment guaranteed by the village. .The guarantor, the village, paid the indebtedness and became subrogated to the rights of the city, creditor, which included the right to exclude the Hunter Crucible Steel Company from further service of water until its indebtedness to the city, paid by the village, should be repaid to the village.
 

 It is the contention of the defendants in error that since by Sections 4 and 6 of Article XVIII of the Constitution of Ohio there is conferred upon the village the power to contract with another municipality for water for its use and the usé of its public, and upon the city the power to sell, and therefore to contract to sell, water to the village, and that since municipally owned and operated water plants are not included in the statutory definition of public utilities, therefore whatever rights inure to the parties and to the public where such contract has been entered into are the rights created by the contract,. and no other.
 

 With reference to the two municipalities themselves, the city of Cleveland and the village of Cuyahoga Heights, the contention of the defendants in error is, probably tenable. It is probably true that neither could enforce performance by the other without performance or tender of performance to the other, for, in respect to supplying water to each other and each other’s public, they owed no duty except such as they might impose upon themselves by contract. But when a municipality, under the authority conferred upon it by the Constitution, en
 
 *550
 
 gages in the operation of a public utility, it enters that field burdened with the same duties and subject to the same restrictions, in respect to the public of the territory served, as would apply to and govern a private corporation similarly engaged; and especially where it engages in such enterprise extra territorium is its relationship to the public shorn of sovereign prerogative.
 

 When the city of Cleveland, under the power conferred upon it by the Constitution, entered into a contract to deliver water to the village of Cuyahoga Heights and its public, its status with reference to the public of the village differed from the status of a private corporation obtaining a franchise from a village to perform the same service only in the fact that a municipality, in such situation, has not been declared by statute to be a public utility and probably is not subject to regulation and supervision by the Public Utilities Commission of Ohio. Any provision in its contract with the village which would be void or voidable because of its being unlawful or unreasonably discriminatory if contained in the franchise of a private corporation will be void or voidable as to the public of the village.
 

 When the village, under the powers conferred upon it by the Constitution, elected to supply its public with water for domestic and commercial purposes, through a water system it already owned, and elected to secure and distribute that supply of water by contract with another municipality instead of by contract with a private corporation, its relationship and duty to its public because of such contract was not different from that which it would have been
 
 *551
 
 had it accomplished the same result by a franchise-contract with a private corporation.
 

 The duty of the city of Cleveland to the public of the village of Cuyahoga Heights with reference to supplying it with water was the duty of a public service corporation dedicated to the service of such public. The duty of the village of Cuyahoga Heights to its own public was the duty of a government contracting for a public service, and, as such, to do so without discrimination in favor, of or against any member of its public; and neither the city nor the village had the power, by contract with the other, to absolve itself from its duty.
 

 The question of the right of the village of Cuyahoga Heights to guarantee the payment of water rents of its public to the city of Cleveland is not here considered. The fact that it actually has paid the water rent of the Hunter Crucible Steel Company and has not been reimbursed therefor is the basis of the refusal of the village to permit the city to furnish water to the plaintiffs in error. The contractual obligation of the village to pay and the actual payment by the village out of its general fund is significant here only because it definitely characterizes the contract as one for the benefit of the whole' public of the village, and therefore gives rise to the duty of the village to distribute water, or to permit water to be distributed, to such public without discrimination. That it is a discrimination against the plaintiffs in error to require of them the payment to the village of $4,546.80 for the privilege of thereafter buying water from the city, which payment is not required of any other member of its public, proclaims itself by the mere statement.
 

 Irrespective and regardless of the provisions of
 
 *552
 
 the contract, there arose out of the exercise by the village of its power to contract for a public water service certain duties and obligations to its public in respect to such service that had not theretofore existed; duties that had their origin in the exercise of such power, but not in the contract; duties that originated because of the contract, but were not of it; duties toward its public of which it could not absolve itself by contract with a third person, among which was the duty to contract for the distribution of water to its public without discrimination and to require of the contracting public service corporation distribution of water to such public without discrimination. At the same time, because of its having entered the field of public utilities, there devolved upon the city of Cleveland certain duties toward the public of the territory it had undertaken to serve that were cast upon it, not by the contract, but because of the contract, among which was the duty to serve the utility to the public of the designated territory without discrimination, from the performance of which duty it could not absolve itself except by contract with the persbn to whom it owed the duty.
 

 See
 
 State, ex rel. Milsted,
 
 v.
 
 Butte City Water Co.,
 
 18 Mont., 199, 44 P., 966, 32 L. R. A., 697, 56 Am. St. Rep., 574;
 
 Burke
 
 v.
 
 City of Water Valley,
 
 87 Miss., 732, 40 So., 820, 112 Am. St. Rep., 468;
 
 Beaver Valley Water Co.
 
 v.
 
 Public Service Commission,
 
 70 Pa. Super. Ct., 621;
 
 City of Houston
 
 v.
 
 Lockwood Investment Co.
 
 (Tex. Civ. App.), 144 S. W., 685;
 
 Farmer
 
 v.
 
 City of Nashville,
 
 127 Tenn., 509, 156 S. W., 189, 45 L. R. A., (N. S.), 240;
 
 Sheffield Waterworks Co.
 
 v.
 
 Wilkinson,
 
 4 Law Rep., Comm. Pleas Div., 410;
 
 Ginnings
 
 v.
 
 Meridian Waterworks Co.,
 
 100 Miss., 507, 56 So., 450, Ann. Cas., 1914A, 540;
 
 Poole
 
 
 *553
 
 v.
 
 Paris Mountain Water Co.,
 
 81 S. C., 438, 62 S. E., 874, 128 Am. St. Rep., 923;
 
 Millville Improvement Co.
 
 v.
 
 Millville Water Co.,
 
 92 N. J. Eq., 480, 113 A., 516;
 
 Turner
 
 v.
 
 Revere Water Co.,
 
 171 Mass., 329, 50 N. E., 634, 40 L. R. A., 657, 68 Am. St. Rep., 432;
 
 City of Covington
 
 v.
 
 Ratterman,
 
 128 Ky., 336, 108 S. W., 297, 17 L. R. A. (N. S.), 923;
 
 State, ex rel. Scotillo,
 
 v.
 
 Water Supply Co. of Albuquerque,
 
 19 N. M., 27, 140 P., 1056;
 
 Linne
 
 v.
 
 Bredes,
 
 43 Wash., 540, 86 P., 858, 6 L. R. A. (N. S.), 707, 117 Am. St. Rep., 1068, 11 Ann. Cas., 238;
 
 City of Chicago
 
 v.
 
 Northwestern Mutual Life Ins. Co.,
 
 218 Ill., 40, 75 N. E., 803, 1 L. R. A. (N. S.), 770.
 

 The provision in the contract, “In the event the village should so pay such claims, or should so be requested to pay such claims, then and in that event the city shall not turn on the water for such consumer, or for any one holding title or possession through or from him, unless the city shall receive notice in writing from the village consenting to the turning on of such water. If the city shall so turn on the water without such notice, the claim of the city shall be null and void, and if the claim shall have been paid by the village, the city shall repay the village the amount of the payment so made,” was not framed for and does not benefit the city of Cleveland, but was framed for the sole benefit of the village¡ The provision is unreasonably discriminatory ; it violates Sections 2 and 19 of Article I of the Constitution of Ohio and the “due process” provision of the Constitution of the United States (Fourteenth Amendment, U. S. Constitution), and, in so far as it attempts to subject property of a subsequent owner to the payment of an indebtedness of a prior owner without the perfection of a lien thereon, is void.
 

 
 *554
 
 We have not the situation here of an isolated property, far distant from an existing water main where the expense of serving such isolated property will be greatly in excess of the revenue obtainable from such service, but we have a property situated upon an existing main, installed and owned by the village, with no reason assigned for failure to permit service other than that the present owners of the premises are unwilling to pay an indebtedness incurred by a former owner, which indebtedness is not a charge upon the premises, and of the existence of which the present owners had neither notice nor knowledge. The exaction by the village that the city refrain from serving water to the plaintiffs in error until they have paid an indebtedness contracted by •the Hunter Crucible Steel Company is an unreasonable and unlawful discrimination against them, and the insertion of such provision in the contract was a violation of the duty of the village to its public and was unlawful. Its enforcement against the plaintiffs in error is an unlawful discrimination against them. The judgment of the Court of Appeals will be reversed and a mandatory injunction against the defendants in error will issue, commanding the defendants in error to supply water to the plaintiffs in error, upon reasonable terms, in accordance with the contract between the city of Cleveland and the village of Cuyahoga Heights, ignoring the provision therein requiring the owner of premises to pay the unpaid water rent of his predecessor in title.
 

 Judgment reversed.
 

 Marshall, C. J., Hat, Allen, Kinkade, Jones and Matthias, JJ., concur.