CITY OF SEVEN HILLS ET AL.,
APPELLEES, *v.* CITY OF CLEVELAND,
APPELLANT.

(Nos. 40114 and 40115—Decided
September 15, 1980.)

*Amsdell & Slivka Co., L.P.A.,* for appellees.

[2] The record is unclear as to the precise number of municipalities and townships which

*Messrs. Bartunek, Garofoli & Hill,* for appellant

DAY, J. This is an appeal by the city of Cleveland from a decision of the Court of Common Pleas of Cuyahoga County. The prime relief sought below by plaintiffs-appellees was the regionalization of the water supply system of Cuyahoga County, presently owned and operated by the city of Cleveland. The trial court granted this and other relief. For reasons adduced below, the judgment is affirmed in part, reversed in part and remanded for further proceedings.

I.

*Procedural Background*

This protracted litigation had its inception in June 1975, with the filing of a "Complaint for Declaratory Judgment, Permanent Injunction, Damages and Other Legal and Equitable Relief." The city of Seven Hills was the original plaintiff in the case, designated C.P. No. 943,313. The city of Cleveland was and has remained the sole defendant.

In June 1976, a "Petition to Create a Regional Water District" was filed pursuant to R.C. Chapter 6119 and assigned C.P. No. 957,186. Twenty-one municipalities in Cuyahoga County joined as original petitioners seeking to create a regional water district encompassing Cuyahoga County in its entirety.

Subsequently, another petition was filed under R.C. Chapter 6119 and designated C.P. No. 975,608. This petition sought the creation of a regional water district comprising all of the municipalities and townships of Cuyahoga County with the exception of the city of Cleveland.[2]

ultimately joined in either or both of these petitions for regionalization. It does appear, however, that numerous municipalities and townships remained uncommitted. Several filed objections to one or both petitions. Cleveland filed objections to both petitions.

The three cases (Nos. 943,313; 957,186; and 975,608) were consolidated for trial. At a later date, case No. 975,608 was severed and hearings commenced in November 1977. The trial court ultimately dismissed the petition (C.P. No. 975,608) to create a regional water district which did not include the city of Cleveland. No appeal was taken from this decision.

Beginning in August 1978, hearings were held in consolidated case Nos. 943,313 and 957,186. It was stipulated that the evidence and exhibits presented in case No. 975,608 could also be considered by the trial court in its ruling in the remaining consolidated cases.

A third amended complaint in C.P. No. 943,313 filed in October 1976, added numerous new-party plaintiffs and involuntary plaintiffs[3] and sought the following relief:

"1. Declare the Defendant equitably be estopped from denying the validity of the contracts between itself and the municipalities of the City of Parma, Ohio; City of Broadview Heights; and City of Independence, Ohio * * *

"2. Declare the Defendant equitably be estopped from denying its obligations under said contracts specifically, but not limited to, Defendant's obligations to supply an adequate amount of water, maintain the water supply and distribution system (including but not limited to maintaining trunk mains and distribution mains) and extend trunk water mains, all at Defendant's costs.

"3. Order the Defendant to specifically perform its obligation to repair, improve and maintain the water supply system and distribution system under its control and order the Defendant, at its costs, to clean out and reline and/or augment and/or replace and/or reconstruct the entire water supply and distribution system which carries water from the Defendant's water works to the Plaintiff Municipality and its inhabitants as the Court deems legally and equitably necessary and just.

"4. Order that under Court supervision Defendant construct or extend whatever trunk mains are necessary to adequately supply water to Plaintiff and its inhabitants, including, but not limited to, extending trunk mains located in the City of Parma, Ohio, into the corporation limits of the City of Seven Hills at Defendant's costs.

"5. Order that under Court supervision Defendant take whatever steps are necessary and make whatever repairs or improvements are necessary, wherever necessary, to insure an adequate supply of water at 60 p.s.i. and 2500 g.p.m. for a duration of two hours on a maximum consumption day within the Plaintiff Municipality at Defendant's costs.

"6. Order that Defendant be compelled to give a complete detailed accounting of the disposition of all funds derived from Defendant's operation of its water works since the date of the Contract between Plaintiff and Defendant, November 8, 1941.

"7. Plaintiff [Seven Hills] further prays for an order of the Court awarding Plaintiff the sum of Thirty Six Thousand Six Hundred Sixteen Dollars and twenty-five cents ($36,616.25) in damages for the sums expended by the Plaintiff to attempt to alleviate the lack of supply of water within the Plaintiff Municipality.[4]

---

[3] Seemingly, all of the municipalities and townships which are supplied with water by the city of Cleveland were ultimately joined as new-party plaintiffs or involuntary plaintiffs. The county commissioners of those counties to which Cleveland supplies some water were also joined as plaintiffs. In addition, several municipalities, townships and county commissioners of counties to which Cleveland supplies no water were made parties-plaintiffs to the action.

[4] This claim for damages was severed from the balance of the action and assigned C.P. No.

"8. Grant a permanent mandatory injunction against Defendant, its agents, employees and officers to compel Defendant, its agents, employees and officers to take whatever steps are necessary to meet the established fire and health standards of an adequate water supply as set forth by the Insurance Services Office of Ohio in order to abate the public nuisance conditions within the Plaintiff Municipality.

"9. Order that a Regional Water District be organized and created comprising the water treatment, supply and distribution system of the Defendant and the territory served thereby pursuant to the provisions of Chapter 6119 of the Ohio Revised Code, or, in the alternative, and in lieu of creating a new and separate water district, issue an order in Cuyahoga County Common Pleas Court, Case Numbers 886594 and 892711 Consolidated, and Case Number SD-69411, declaring the purpose of the existing Cleveland Regional Sewer District be expanded to include the supply of water to users within and without the said Cleveland Regional Sewer District and embracing such territory as determined by the Court.

"10. Such other and further relief as the Court may deem just, lawful and equitable, including reasonable attorney fees, necessary expenses and the costs of this action."

## II.

The trial court granted sweeping relief (see Part V, *infra*) and the city of Cleveland has appealed assigning seven errors. The city also made a "Statement of Issues." The issues stated are clearer and shorter than the formal assignments of error. The issues are treated as the assignments and are set out in the margin.[5]

## III.[6]

## IV.

### The Evidence

It is undisputed that Lake Erie provides more than an adequate source of water for the system. It is apparently conceded also that both raw and treated water are of generally acceptable or good quality. The testimony and exhibits were concerned, instead, with the ability of the system to provide adequate supplies of water to the service areas, both now and in the future. The evidence focused upon

---

943,313A. The trial court awarded Seven Hills damages in the amount prayed. The judgment was affirmed by this court in *Seven Hills* v. *Cleveland* (Cuyahoga Cty. Ct. of Appeals No. 37507, July 6, 1978), unreported.

[5] The "Statement of Issues" reads:

*"Statement of Issues*

"1. A court has no authority to consolidate for trial a special statutory proceeding with an action in law.

"2. A court cannot substitute its judgment for the lawful discretionary acts of public officials.

"3. A court cannot appoint a receiver for a municipal public utility because of an anticipated failure.

"4. A court of one county cannot order regionalization of an area containing more than that one county.

"5. A court has no authority to include a municipality in a regional water district, where that municipality specifically objects to its inclusion.

"6. A court has no authority to appropriate a municipal public utility by declaring it a nuisance, and no authority to transfer the ownership and operation of that utility to another governmental agency under equitable or inherent powers of the court.

"7. A court is expressly prohibited by the United States and Ohio Constitutions from appropriating a municipal public utility and transferring it to another governmental agency under any circumstances."

[6] Reporter's Note: Part III of the opinion, a discussion of the details of the Greater Cleveland water supply system, has been *deleted from the reported decision.*

the present condition of various water treatment, pumping, transmission, storage and distribution facilities, the nature of the problems confronting the system, the city of Cleveland's efforts and ability to deal effectively with past problems, and its efforts and ability to plan effectively for the future.

### A.[7]

### B.

The studies and testimony of numerous witnesses leave little room for doubt that a vast amount of technical improvement is required. A detailed recitation of such problems is not necessary. And while there is disagreement concerning the level of immediacy of particular problems and the extent of certain deficiencies in technology and capacity of the system, the major problems and their priorities are generally recognized. A capital improvement program has been designed and partially begun, but it has been criticized as being wholly inadequate in terms of its scope, as well as long overdue.

The demand for regionalization is chiefly a consequence of the alleged failure to adequately maintain the system and to plan for the future. The assertion is that the city of Cleveland has, through inaction, demonstrated its inability to effectively operate a reliable water supply system. Closely related to this assertion is that the organizational structure of the system tends to paralyze the city in any efforts to maintain and upgrade operations. One characteristic of the system's predicament is the linkage of one problem or set of problems to others in ways that compound the difficulty of solution. Another is the degree to which political considerations compromise managerial independence.

The evidence discloses that the city of Cleveland has been slow to respond to recommendations for improvements to the system. Indeed, there is evidence which indicates that there has been a total lack of response to some recommendations. The precise extent of inaction is unclear. On the other hand, some improvements have been accomplished.[8]

### C.[9]

### V.

### *The Trial Court's Decision*

The trial court concluded that a state of emergency exists in the operation of the Cleveland water supply system. The emergency is a result of Cleveland's "inherent inability * * * to competently operate the Water System in the face of past and present administrative, political and fiscal difficulties, * * *."

The court also found that Cleveland "has defaulted in its contractual obligations to provide an adequate supply of * * * water and to repair, maintain and improve the * * * system", thereby endangering the health, safety and welfare of the consumers.

In conjunction with these findings, the court applied a revolutionary theory and concluded that while Cleveland holds the assets and has operational control of the system, the users have paid for and own it. Thus, the court held that the city of Cleveland holds it in trust for the users and has failed to adequately perform its fiduciary responsibilities. Finally, the trial

---

[7] Reporter's Note: Part IV A of the opinion, a synopsis of the evidence detailing the findings of several studies of the water supply system, has been deleted from the reported decision.

[8] Reporter's Note: The remainder of Part IV B of the opinion, a discussion of the suburbs' complaints about the water system and Cleveland's response, has been deleted from the reported decision.

[9] Reporter's Note: Part IV C of the opinion, a detailed discussion of previous litigation against Cleveland concerning the cleaning and relining of distribution mains and pipes, has been deleted from the reported decision.

court held that the system, as presently operated, constitutes a nuisance.

The city of Cleveland was enjoined from maintaining the nuisance and ordered to specifically perform its contractual obligations to repair, maintain and improve the system in order to provide an adequate water supply.

All Water Division funds were ordered segregated from those of the city of Cleveland. The city was also ordered to return all of the waterworks funds, invested in city obligations, to the Water Division.

Distribution mains which are sixteen inches or smaller, but *functioning as trunk mains,* were declared to be "trunk mains" under the various contracts. The cost of cleaning, relining, installation and repair of such lines is to be apportioned on a system-wide basis under the trial court's order. Any suburb or combination of suburbs may opt out of the apportionment of costs by performing repairs and maintenance on its or their own "distribution" lines.

The prime relief ordered by the court was the regionalization of the water supply system. This would involve a transfer of all assets of the Cleveland system to a regional governmental entity or political subdivision created pursuant to R.C. Chapter 6119. It was further ordered that a certified audit of the water system be conducted prior to transfer.

Pursuant to motion of the plaintiffs, the Cleveland system was placed in receivership pending creation of the region and ancillary to the relief of regionalization and other equitable relief ordered by the trial court. The receiver was to have all powers necessary to preserve the assets and to operate the system in the interim before regionalization is to occur.

The trial court expressly determined under Civ. R. 54(B) that there was no just reason for delay as to the issues decided in the court's opinion and journal entry. All orders of the trial court were stayed pending final disposition by this court.

## VI.

### Disposition on Appeal

The city of Cleveland's seven issues will be treated as assignments of error.

### A.

The claim of lack of authority to consolidate a special statutory proceeding with an action at law fails because the plaintiffs' varying remedial requests were all founded on the common, complicated factual assertion that Cleveland's water distribution system was in a parlous condition (Civ. R. 42[A]). It is true that Civ. R. 42(A) requires a hearing. Appellant (the city of Cleveland) contends none was had (though requested) with a consequent violation of due process. No record reference is cited to support the claimed request. This alone justifies a reviewing court in passing over the contention (App. R. 12[A]) without either relief or further comment beyond noting that the issue lacks merit.

### B.

Obviously, a court cannot substitute its judgment for discretionary judgments of public officials in the conduct of their offices unless the discretion is abused.[10]

---

[10] Cf. *State, ex rel. Breno,* v. *Indus. Comm.* (1973), 34 Ohio St. 2d 227, 230 [63 O.O.2d 378]: "A long line of Ohio cases has established that a writ of mandamus will issue only to compel the performance of a clear legal duty or where a clear legal right to the remedy has been shown, and it will not lie to control the discretion confided in an officer, commission, or inferior tribunal, unless it clearly appears that such discretion has been abused. * * *"

The *Breno* principle controls mandamus. A comparable principle has been applied to injunctions to restrain public officials in the performance of their duties, *State, ex rel. Schaefer,* v. *Zangerle* (1932), 43 Ohio App. 30, 37-38; and see *Waddick* v. *Merrill* (1904), 5

The relevant inquiry is whether the record sufficiently demonstrates that persons responsible for the operation of the water system have managed it in a way to warrant a description of individual performances as "abuse." The evidence will not support that characterization. Issue No. 2, thus narrowed, is well taken.

Still the evidence of the deterioration of plant and slack maintenance warrants the inference that the overall stewardship of the system requires some attention from the supervening authority of a court of equity. The court's authority in equity will receive more attention in ensuing Sections D and E of this Part of the opinion. However, an issue with priority is whether there is authority under R.C. Chapter 6119 to compel regionalization.

### C.

The primary argument advanced by the city of Cleveland is that the trial court erred in granting the regionalization relief pursuant to R.C. Chapter 6119 (relevant sections of R.C. Chapter 6119 are reproduced in Appendix A[11]).

Cleveland urges that it may not be incorporated into a regional water district created pursuant to R.C. Chapter 6119 without its consent. The essence of the contention is that R.C. Chapter 6119 may not be read to authorize the involuntary inclusion of a municipality in a regional water district.

Several factors combine to require the conclusion that Cleveland's position is meritorious and must be sustained.

R.C. 6119.02 provides that a petition for regionalization *"shall* be signed" (emphasis added) by one or more municipal corporations, counties, or townships, or by any combination of them. And legislative authorization must be obtained

prior to the signing of the petition by a subdivision. Some of the subdivisions include other subdivisions, *e.g.,* a county will include cities and townships. The statute does not specify whether the petition must be signed by all of the subdivisions within a subdivision to be included, in whole or part, within the proposed region. Stated another way, the statute does not speak to whether the area of the proposed region may include territory lying within a subdivision which has not signed the petition.

Nevertheless, it makes little sense to require legislative authorization for a subdivision which wishes to be included but to permit inclusion of a non-consenting subdivision, *i.e.,* one whose signing of the petition has not been legislatively authorized. (R.C. 6119.02.)

Indeed, this conclusion is buttressed by the provisions of R.C. 6119.04(B). Subsections (1) and (2) allow for the intervention by a municipality which *desires* to have "some part or all of its territory *included* within the district" (emphasis added). Subsection (3)(a) provides for the circumstance in which an *original petitioner* or *intervening party* seeks to reduce the size of the proposed district. There is, however, no provision for the situation in which a non-petitioning, non-intervening municipality seeks to *exclude* itself from the territory of the proposed region.

The petitioning suburbs assert that the provisions for the filing of objections "* * * to the granting of the requests made in the prayer of the petition," R.C. 6119.04, by "* * * [a]ny person or any political subdivision residing or lying within the area affected by the organization of the district or by the plan for the operation of the district * * *," *id.,* have

---

C.C. (N.S.) 103, 111: "* * * It [the cause of action] has developed now into an action of mandamus, practically. It is said what is desired is a mandatory injunction, which is, in its nature, a mandamus, when directed to particular officers and commanding performance of certain specific official acts or duties. * * *"

[11] Reporter's Note: Appendix A, consisting of the relevant statutes, has been deleted from the reported decision.

been inserted to allow for just such a contingency, *i.e.,* the situation in which a non-petitioning, non-intervening municipality objects to its inclusion within the district.

This argument ignores the fundamental nature of the regionalization statute. For it merely provides the *procedure* by which political subdivisions may achieve the desired goal. The role of the court is limited to determining the *necessity* of the district and whether its existence will be conducive to the public health, safety, convenience and welfare. The "objections." thus contemplated must, therefore, be aimed at these factors alone.

One additional aspect of the statutory scheme leads to the inescapable conclusion that the procedure is *exclusively voluntary in nature.*

R.C. 6119.06 delineates the rights, powers, and duties with which the district's board of trustees is vested. Subsection (M) grants the power to acquire land "* * * by purchase or otherwise, * * * or by the exercise of the right of condemnation * * *." However, the board may not condemn (appropriate) "* * * any * * * water management facility owned by any * * * political subdivision, * * *" *id.*

This section has seemingly been enacted in deference to the right of municipalities to acquire and operate public utilities outside the region. This initial right is unequivocally granted by Section 4, Article XVIII of the Ohio Constitution:

"Any municipality may acquire, construct, own, lease and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. * * *"

The Supreme Court of Ohio has held that by virtue of this Constitutional provision, the legislature "* * * has no power to limit or restrict * * * the power and authority of a municipality to operate a public utility * * *," *State, ex rel. McCann,* v. *Defiance* (1958), 167 Ohio St. 313, 316 [4 O.O.2d 369].

Surely, if the legislature granted the district's board of trustees the power to condemn a municipality's water management facilities, this would be in derogation of the Constitutional grant of power to municipalities to operate their waterworks systems (public utilities). Thus, the power to condemn is specifically limited and emphasizes the legislative recognition of the limits of its authority to authorize cancellation of the municipal powers granted by Section 4, Article XVIII of the Ohio Constitution.

Involuntary inclusion of a municipality in such a region would amount to no less of an incursion. For inclusion within the district, with the attendant grant of broad powers to the board of trustees, must necessarily divest a municipality of all or part of its control over the operation of any waterworks facilities which it may happen to own, lease, or operate. The same invasion of its power would limit its ability to freely contract for its water supply.

The legislature will not be presumed to have acted in an unconstitutional manner. But even if this conclusion were not mandated by Section 4, Article XVIII of the Ohio Constitution, the statute (R.C. 6119.02) must necessarily be construed as not contemplating involuntary inclusion. The failure to provide for the contingency of a non-consenting municipality, viewed in light of the total statutory plan, requires the conclusion that the legislature did not intend to sanction involuntary inclusion by means of the procedures set down in R.C. Chapter 6119.

Accordingly, the city of Cleveland's contention that it may not, absent its consent, be included in a regional water district created pursuant to R.C. Chapter 6119 is well taken. These conclusions encompass and dispose of Cleveland's Issue No. 5 favorably to it. The same conclusions moot Issue No. 4.

The next question is whether the equitable powers of the Court of Common Pleas sanction any of the actions taken below.

### D.

Equity is a jurisprudence which grew from the need to provide remedies unavailable or inadequate at common law. This provisioning had the effect of relieving the harshness implicit in legal remedies which fell short of the relief needed to correct a wrong. A classic example is the development of the remedy of injunction against a continuing trespass as an alternative to repetitive damage suits. Equity's creation and molding of remedies may be seen as either just or arbitrary depending upon the perception of the viewer. But in any event, it is designed to mitigate the rigidity of common law relief. And its plasticity is such that one can say with some assurance that the perimeter of its authority will expand to fit the size of whatever problem is properly before a court with equity powers. Accordingly, this opinion does not presume to set the perimeters of the trial court's authority were the record to show that the potable water supply for the two million persons in the court's jurisdiction was in serious jeopardy. Receivership may be a draconian method but if the water system were demonstrably about to collapse and receivership could rescue it, no doubt equity's flexible reach would find the power to install a receiver.

Thus, the conclusions reached with respect to the statutory power do not imply that a court of equity is without power to rectify the faults of the water supply system when the crisis is severe and collapse imminent. Apart from inherent equitable power to meet so critical a demand there are other considerations.

By virtue of Cleveland's having undertaken to supply water to outlying suburbs, "* * * there arose * * * certain duties and obligations to * * * [the]

public in respect to such service that had not theretofore existed * * *," *Western Reserve Steel Co.* v. *Cuyahoga Heights* (1928), 118 Ohio St. 544, 552. Certainly among these is the duty to provide an adequate supply of water and to maintain and improve the system in a manner to ensure that it can continue to function efficiently. Whether Cleveland has actually obligated itself under the contracts with the other municipalities to so perform is almost beside the point. It is a duty that has its "* * * origin in the exercise of * * * [the] power [to operate a waterworks system], but not in the contract[s]; * * * [a duty] that originated because of the contract, but * * * [is] not of it * * *," *id.*

In terms of the present case, the duty to purvey water crucial to the existence of the community both evokes and supports judicial power to insure performance. The judicial remedy can be tailored to the problems posed. In an extreme case there is surely a broad range of remedial choices under the equity powers including system-wide receivership. And this power exists without regard to any authority posited, or restrictions imposed, by R.C. Chapter 6119. It is grounded in the community's right to survive.

System-wide administration by a receiver has the virtue of safeguarding the municipal rights vouchsafed by Section 4, Article XVIII of the Ohio Constitution,[12] while providing the temporary unity of management necessary to a confrontation of the system's interrelated problems for the period of the crisis. Such an expedient would have only a temporary life. Nevertheless, its extraordinary nature cautions restraint.

No one suggests that the problems of the Cleveland water system are counterfeit. But neither is it clear that they are currently apocalyptic.

Therefore, further inquiry is

---

[12] See excerpt from Section 4, Article XVIII of the Ohio Constitution, *supra.*

necessary to update the information on the condition of the system. With that information in hand, a remedy can be fashioned to correct the evils that still exist. Should these prove extensive and complicated enough to justify a receivership to implement the remedial orders, a temporary receiver will be in order (see Part VI E, *infra*).

The cause will be remanded for immediate hearing for an update on the condition of the Cleveland water system.

These conclusions dispose of the city of Cleveland's Issues Nos. 6 and 7.

Issue No. 6 is well taken, at least in part, because this record must be updated before determining whether those equitable considerations should be invoked which would justify even temporary system-wide administration. *A fortiori* the record will not support a transfer of Cleveland's property to a new entity.

There are also consequences for Issue No. 7 in the denial or the propriety of regionalization by a court of equity. First, that result effects complete compliance with Section 4, Article XVIII of the Ohio Constitution which blocks a court order transferring title to a municipally owned utility from the owner city to any other entity. Second, it moots the state due course of law and the federal due process claims asserted in Issue No. 7.[13]

### E.

The trial court, as previously noted in Part V, *supra,* appointed a receiver to manage the Cleveland water supply system pending the transfer of its assets to the regional water district. However, insofar as the appointment of the receiver is deemed ancillary to the relief of regionalization, the need, if any, for such an appointment is obviated by virtue of our holding under Part VIC, *supra.*

However, it appears that the trial court may have contemplated the appointment of a receiver as an adjunct to other relief in the nature of specific performance. For the "Memorandum of Opinion" of the trial court states, in part:

"The Court has determined that all of the parties to this lawsuit and those affected by the operations of the Cleveland Water Department must be given some relief; that the evidence entitles the plaintiffs to a decree herein. The action is basically one for specific performance of contracts but also of duties to which it dedicated itself in assuming the obligations to supply water to Northeastern Ohio and to abate a nuisance.

"The Court is required to fashion a decree that will bring about the necessary results. It does not appear that specific orders directed to the many complaints of the plaintiffs could practically be entered. The Court cannot control the day-by-day operations of the Water Department."

At the time the trial court made these observations, the record evidenced a very critical condition in the water system of the city of Cleveland. If, after hearing on remand, those parlous conditions still exist or have not materially improved, the appointment of a receiver may be part of the requisite relief.

The contention made by the city of Cleveland in its third issue, that the trial court erred in appointing a receiver, will be dependent upon the trial court's conclusions following a hearing for an update of conditions after remand.

### F.

The evidence was that repair and maintenance was a major problem in the

---

[13] The mooting of the due course of law and due process issues avoids a most difficult question. For, in the present case, the due process problem, in particular, is cast in an unusual mold. The issue framed by the facts would require a determination whether federal or state due process affected the transfer of the ownership of the property of one state entity (the city of Cleveland) to another (the region) by order of a third (the court). Query, whether a federal question is involved at all under these facts?

supply system. And this issue directly affected contract obligations of the city of Cleveland to provide an adequate supply of potable water. The trial court addressed these related problems directly in three paragraphs of its order (apart from those relating to the receiver's functions). The order reads, in part:

"B. That the Defendant City specifically perform its contractual obligations to repair, maintain and improve the Water System and to provide an adequate supply of safe and potable water to the System's users;

"* * *

"F. That distribution lines in the Cleveland Water System 16 inches or less in diameter functioning as trunk mains (that is, primarily supplying water to distribution mains as opposed to water service connections) be designated as trunk mains with the cost of their installation, maintenance and repair, including cleaning and relining, apportioned on a system-wide basis;

"G. That any suburb or combination of suburbs may elect to perform its or their own repairs or maintenance on its or their own distribution lines." (Journal Entry, page 4.)

Apparently the court intended to require specific performance of the contracts and to couple that requirement with mandatory repair and maintenance of both trunk mains (and distribution lines functioning as trunk mains)[14] with costs either apportioned between city and suburb or assumed by a suburb or combination of suburbs for the suburban

stretch of the main under repair. Such assumption by a suburb or suburbs would avoid apportionment.[15]

This approach or some elaboration of it is well within the authority of the trial court and is justified by the record. Moreover, the condition is of such magnitude that it is a safe assumption that it has not been fully alleviated since the time of the order below. As a remedy it is approved subject to the caveat that modification of the mandate may be made after the remand and in the light of the updating of system information (see Part VI. H, infra).[16]

### G.

One final aspect remains for consideration. It involves the financial status of the waterworks system. Of particular concern is the order of the trial court that the city of Cleveland segregate waterworks funds and return all such funds invested in city of Cleveland obligations (Journal Entry, paragraphs D and E, page 4).

This investment issue was raised by the suburbs in order to highlight the alleged mismanagement of the system. It was relevant for that purpose. There is, however, no demonstration that the investment was illegal. Thus, the orders embodied in paragraphs D and E on page 4 of the Journal Entry are reversed.

### H.

The record evidences substantial problems in the water system at the time the current litigation began in 1975.

---

[14] Distribution lines are not included unless functioning as trunk mains.

[15] This divination is assisted by reference to a portion of the order which our opinion sets aside. If the receivership had been upheld, the receiver's duties were to include:

"(f) The causing of the entire system to be cleaned and relined as necessary. All water mains shall be classified on the basis of function rather than merely size, with the entire system bearing the cost of the installation,

maintenance and repair, including cleaning and relining, of the mains that are functionally trunk or feeder lines." (Journal Entry, page 7.)

[16] It is a point of significance that neither the appellant (the city of Cleveland) nor the appellees have challenged this portion of the order below. And the appellees' further approval is evidenced by their having filed a motion to expedite this decision to mitigate increasing costs for contemplated maintenance and improvements.

However, both the passage of time and the lack of a current technical evaluation requires a remand to refresh the record on maintenance and repair. There must be review to determine what has been accomplished, what needs to be done, and when. Also needed is a determination of what work is planned and what work is already designed or underway.

When the status of maintenance and repairs has been updated after remand, the trial court will consider what remedies are appropriate and necessary, including the possibility of a temporary system-wide receivership, to insure performance of the contracts between the city of Cleveland and its water users. In no event are the property and assets of the Cleveland water system to be transferred or conveyed to any other governmental agency by court order.

## VII.

### Summary

The cases are remanded to the trial court. The trial court shall:

(1) Immediately schedule a hearing to update information on the status of maintenance, repairs, and necessary replacements in the system.

(2) If problems are found to exist in the water system, consider what remedies are appropriate and necessary, including the possibility of a temporary system-wide receivership.

(3) Issue remedial orders (within the perimeters defined by this opinion) to effectuate the needed maintenance, repairs, and replacements in the system to insure performance of the contracts between the city of Cleveland and its water users.

(4) In the event a receivership is established, specify its powers, the limits of its authority, the particular objectives it is to accomplish and require progress reports every six months by the receiver until the objectives are achieved.

### A.

The judgment below is affirmed in these particulars:

(1) The orders exemplified in paragraphs B, F, and G on page 4 of the Journal Entry are affirmed.

(2) After the hearing on remand mandated in Part VI D, *supra,* orders comparable to those in paragraphs A and C, on page 4 of the Journal Entry, may be issued if the findings after hearing on remand justify such action.

### B.

The judgment below is reversed in these particulars:

(1) The orders exemplified in paragraphs A, C, D, and E, on page 4 of the Journal Entry, are reversed.

(2) All the orders exemplified on pages 5, 6, 7, and all the orders exemplified in paragraphs 6-9 on page 9 of the Journal Entry are reversed.

*Judgment accordingly.*

PATTON, J., concurs.

PRYATEL, P.J., concurring in part and dissenting in part. While I concur essentially with the judgment of the majority, I dissent from the conclusion that the case be reopened for more evidence.

The suburbs' primary complaint has been their lack of representation in the setting of rate hikes which they consider too high. On the other hand, the city of Cleveland argues that it has been unable to provide the maintenance the suburbs demand, because the suburbs have vehemently and consistently opposed rate increases and thereby stymied the city of Cleveland in its efforts to secure the issuance of needed bonds.

This vexing case constitutes the culmination of a complex, protracted litigation process which has been conducted over many years between the city of Cleveland, the purveyor of potable water, and some sixty suburbs which rely

entirely upon the city for their water supply. The decision of the trial court below is a laudable and ambitious attempt to reorganize and stabilize an antiquated water supply system under existing law. Notwithstanding the praiseworthy efforts of the trial court, I am convinced that neither law nor the broad powers of equity confer the authority to order the relief given below.

I concur with the majority that both R.C. Chapter 6119 and Section 4, Article XVIII, of the Ohio Constitution prohibit the involuntary inclusion of the city of Cleveland into a regional water entity. A review of R.C. Chapter 6119 discloses that the legislature promulgated only the procedure to be employed in establishing a regional water district. The language of the various sections contemplating the creation of such a district provide that municipalities must initially have their petitions authorized by their legislative authorities (R.C. 6119.02); or, that they may later petition to be included in whole or in part, or to reduce part of their proposed territory from the district (R.C. 6119.04[B]).

Finally, R.C. 6119.06(M) provides that the district, once created, may petition the Court of Common Pleas to permit the district to:

"Acquire, in the name of the district, by purchase or otherwise, on such terms and in such manner as it considers proper, or by the exercise of the right of condemnation in the manner provided by section 6119.11 of the Revised Code, such public or private lands, including public parks, playgrounds, or reservations, or parts thereof or rights therein, rights-of-way, property, rights, easements, and interests as it considers necessary for carrying out Chapter 6119 of the Revised Code, but excluding the acquisition by the exercise of the right of condemnation of any waste water facility or water management facility owned by any person or political subdivision, and compensation shall be paid for public or private lands so taken[.]"

By conveying Cleveland's water system to the regional authority, the lower court has taken away from the city of Cleveland, by fiat, that which cannot be achieved by condemnation—contrary to the mandate of Section 4, Article XVIII, of the Ohio Constitution, which vests in the city of Cleveland the right of complete autonomy over the operation of its water works. Cf. *State, ex rel. McCann,* v. *Defiance* (1958), 167 Ohio St. 313 [4 O.O.2d 369]. Nevertheless, in effect, the court granted condemnation without compensation.

As such, the order of the trial court is contrary to law.

Despite the admittedly desirable purpose of equity to fashion a flexible remedy for those problems not amenable to satisfactory resolution by law, one cannot simply do in the name of equity that which the law expressly prohibits. Equity complements, often supplements, but never legislates.

The express limitations imposed by R.C. Chapter 6119 and Section 4, Article XVIII of the Ohio Constitution cannot be circumvented by the equitable remedies ordered by the trial court. The scope and breadth of this ostensibly unworkable situation demand resolution by the state legislature. It is the legislature which acknowledged in R.C. Chapter 6119 that municipalities have the constitutional right to operate their own water system free from intervention by a new political entity—a regional water district. It is the function of the trial court, delegated by the legislature under R.C. Chapter 6119, to ensure the orderly creation of a regional water district. Its function does not include the determination that the new entity should replace the municipality.

Until such time as the legislature deems it proper to vest in the trial court such extraordinary power, the city of Cleveland must retain its autonomy over the operation of its water system, subject to the good faith obligation to which it

contracted[17] to provide the suburbs with an adequate water supply.

While acknowledging that the trial court cannot support its decision under law, the majority concludes that equity may well offer an alternative means with which to devise a remedy. However, the majority finds that the trial court invoked its equity powers prematurely and therefore orders the marshalling of "fresh" evidence to resolve the murky issues confronting us.

Simply stated, the majority is reopening a case the parties believed had been closed as fully litigated, notwithstanding that our constitutional scope of review is restricted to affirming, reversing or modifying the lower court's decision. Section 3, Article IV, Ohio Constitution. In my judgment our prerogative to modify cannot be construed as authority to reopen a case to hear additional evidence. Indeed, if this case is reopened and returns here some two years hence, will we once again decide that "fresher" evidence is required, and thereby generate more litigation?

After more than two decades of dispute and litigation, after considerable deliberation by the trial court upon voluminous evidence, must we still maintain that we require more evidence before finally reaching a decision? The litigants did not think so. Nor did the lower court. Nor did the majority since they found that the record will not support the conclusion that there was an abuse of discretion in the management of the water system (see Part VI B, *supra*, majority opinion).

In short, I generally concur with the judgment of the majority, except for its decision to remand for "hearing for an update on the condition of the Cleveland water system," as mandated in Part VI D, *supra*, of the majority opinion.

---

[17] Contracts executed in 1941 were signed by the city of Cleveland, while contracts drawn in 1951 were not signed by the city of Cleveland.