FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF GALION, APPELLANT, *v.* HAYES ET AL., APPELLEES.

(Nos. CA-2484 and CA-2496—Decided October 7, 1987.)

*Hottenroth, Garverick & Tilson* and *Stephen F. Tilson,* for appellant.

*Charles D. Lynch,* assistant law director, *C. Richard Thompson* and *Robert P. DeSanto,* Ashland County Prosecuting Attorney; *Richard D. Ronk, Josiah L. Mason, David Montague,* assistant law director, and *John W. Allen,* Richland County Prosecuting Attorney, for appellees.

MILLIGAN, J. The narrow and singular issue in this mortgage foreclosure action focuses upon sewer charges levied against the landowner by the city of Mansfield and whether such charges *ipso facto* become a valid lien upon real estate deserving priority as against bona fide purchasers or creditors without either record notice or actual notice of such charges.

R.C. 729.49 provides in part:

"The legislative authority of a municipal corporation which has installed or is installing sewerage, a system of sewerage, sewage pumping works, or sewage treatment or disposal works for public use, may, by ordinance, establish just and equitable rates or charges of rents to be paid to the municipal corporation for the use of such services, by every person, firm, or corporation whose premises are served by a connection thereto. Such charges shall constitute a lien upon the property served by such connection and if not paid when due shall be collected in the same manner as other municipal corporation taxes. * * *"

The Richland County Court of Common Pleas determined that sewer charges are self-executing and become liens upon the served property and are entitled to chronological priority as against subsequent purchasers or creditors, notwithstanding the fact that no actual or record notice has been given.

Appellant assigns a single error:

"The trial court erred in holding that the city of Mansfield had valid prior liens against real property where those alleged liens were not recorded or placed on tax duplicates so that subsequent bona fide purchasers and lenders involved in the sales of the property could have notice of the city's claim."

In *Union Properties, Inc.* v. *Cleveland* (1943), 142 Ohio St. 358, 27 O.O. 270, 52 N.E. 2d 335, the Ohio Supreme Court interpreted the antecedent General Code provision to R.C. 729.49. G.C. 3891-1, which appeared in the chapter entitled "assessments," authorized municipalities to establish rates and charges for use of the municipal sewerage system and provided that such rates and charges "* * * shall 'constitute a lien upon the property served by such connection

and if not paid when due shall be collected in the same manner as other city and village taxes.' " *Id.* at 360, 27 O.O. at 271, 52 N.E. 2d at 336. In *Cleveland,* a mortgage company sought recovery of monies paid for delinquent sewerage charges under threat to disconnect water services and upon a claim of mistaken belief that the city had a valid tax lien on account of the sewerage service. The Supreme Court ruled that the payments were made to discharge a legitimate debt and may not be recovered as paid under mistake or misapprehension upon the facts of the case. The court declined to rule upon the lien question:

"Taking the view of the instant case as indicated, it is unnecessary to consider or decide whether the lien for sewerage service charges placed against the real estate on the tax duplicate was in the nature of taxes or assessments, taking priority over the indebtedness due plaintiff on its mortgages." *Id.* at 364, 27 O.O. at 273, 52 N.E. 2d at 338.

It is significant that in *Cleveland,* the director of finance certified the unpaid charges to the Auditor of Cuyahoga County who placed same on the county tax duplicate against the property served for collection as other taxes.

In the case *sub judice,* no affirmative action was taken by the municipality to spread upon the records of the County of Richland the unpaid sewerage charges.

In *Western Reserve Steel Co.* v. *Cuyahoga Heights* (1928), 118 Ohio St. 544, 161 N.E. 920, a purchaser of property from a bankrupt estate was denied water service by the municipality, there being a significant bill for prior services to the property unpaid by the bankrupt. The Supreme Court concluded that no lien was created on the premises for the unpaid water rent by operation of law, and that the pur-

chaser, without notice or knowledge of the delinquent account, was entitled to the water services the municipality was contractually obligated to provide to the public.

In an advisory opinion, the Ohio Attorney General has stated:

"* * * Charges made by the legislative authority of a municipal corporation for the operation of a municipal sewerage works under R.C. 729.49 are a *lien against the property served as soon as the charges are incurred, and remain a lien until such time as they are paid.* Such charges are in the nature of an obligation of the land itself, and a subsequent purchaser of the land takes the property subject to the obligation for any unpaid charges. Until such charges are paid, continued sewerage service may be refused." (Emphasis added.) 1981 Ohio Atty. Gen. Ops. No. 81-030, at 2-116.

The provision of R.C. 729.49 that if sewer charges are not paid when due, they "shall be collected in the same manner as other municipal corporation taxes," leads us to an examination of R.C. Chapter 5719.

R.C. 5719.01 provides in part:

"Taxes charged on any tax duplicate, except those upon real estate, shall be a lien on real property of the person charged therewith from the date of the filing of a notice of such lien as provided by law."

Two implications follow from the statutory provision that sewerage charges "shall constitute a lien upon the property served by such connection" and "shall be collected in the same manner as other municipal corporation taxes" if not paid. First, the legislature has clearly provided that sewer services run not simply to the user, but to the land thus served. That pronouncement lifts the claim for delinquent services beyond the claim against the user to include a claim against the land. The descriptive term

is that the claim against the land is a "lien."

However, that determination does not resolve the question of how the lien is "perfected" so as to entitle the claim to priority as against other claimants (bona fide purchasers without notice and bona fide creditors without notice). It is one thing to possess a lien; it is quite another to perfect the lien. Thus, for example, a lien is created by the execution of a real property mortgage; however, that lien is not perfected vis-a-vis other claimants until it is properly recorded with the recorder of the county in which the land is situated. Compare provisions of UCC Article 9, R.C. 1309.01 et seq.

The whole fabric of creating claims in property, the determination of priority as between claimants in property, the issues of actual versus constructive notice, record notice, and the commercial necessity of reliability upon titles are all matters that have been exhaustively chronicled and need no replication here. To walk in the footsteps of a title examiner or abstractor is to quickly learn the pressure points that impact these questions.

The Attorney General's analysis begs the question of whether the "lien" on the property served is perfected without any act of the municipality in recording the charges upon the public records of the county, such as the county auditor.

In 1984, the Ohio Legislature established a lien mechanism in connection with municipal water services, R.C. 743.04. Although the section does not make water charges a "lien," it does provide, as amended in 1986:

"* * * When water rents or charges are not paid when due, the director [of public service] or other official or body may do either or both of the following:

"(A) Certify them, together with any penalties, to the county auditor. The county auditor shall place the certified amount on the real property tax list and duplicate against the property served by the connection if he also receives from the director or other official or body additional certification that the unpaid rents or charges have arisen pursuant to a service contract made directly with an owner who occupies the property served.

"The amount placed on the tax list and duplicate shall be a lien on the property served from the date placed on the list and duplicate and shall be collected in the same manner as other taxes. * * *"

Appellees argue that the legislature, aware of the Ohio Attorney General's opinion, supra, adopted R.C. 743.04 and in so doing deliberately failed to amend the section in question, R.C. 729.49, thus underscoring the legislative determination that the sewerage charge is a lien, perfected without any action by the municipal corporation.

The issue is further complicated by the reality that some liens, once perfected, relate back to a time prior to their perfection for purposes of priority, amount, and enforcement. Real estate taxes fall within this category. See 51 Ohio Jurisprudence 2d (1962) 529, Taxation, Section 405. Mechanic's liens, upon perfection, relate back and may take priority over previously recorded liens or claims. See 68 Ohio Jurisprudence 3d (1986) 175, Mechanics' Liens, Section 127. Persons dealing in the commerce of real estate are aware of these relation-back implications and are forewarned by law to make inquiry upon pain of loss of security priority.

The trial court herein concluded that a buyer loses his status as a bona fide purchaser if he fails to determine that sewer or water bills are not current:

"The city is told that because it allowed * * * [the previous owner] to get behind an entire month on his sewer bill without hiring an attorney to pursue a lien against his taxes, the city is out. That's not what Ohio law contemplates. At what stage of a sale does the law and common sense suggest that the matter of delinquent sewer bills be handled? It is so clear that even a child could understand that [at] the time of closing, even on a sheriff's sale, the legitimate debts of * * * [the previous owner] should be paid prior to any addition[al] encumbrance being placed against the property.

"It is the duty of the seller * * * to pay the legitimate debts such as taxes, sewer charges and mortgages, and anyone who takes the property without seeing that these charges are paid is not a bona fide purchaser as this court understands that term.

"* * *

"A buyer who buys property without determining if the sewer and water bills are current should have no greater protection than the buyer who buys a property as is, sight-unseen. He is not a bona fide purchaser except that he takes the property as it really is with whatever problems it may have including extensive charges for water and sewer. And the lender or title company that allows a closing on a property without looking into the matter of the water and sewer bills is buying themselves [sic] a lawsuit that in the opinion of this court they should not win." (March 11, 1987 judgment.)

Colorado has concluded, following statutory language similar to R.C. 729.49, that no lien statement need be filed in order to preserve the statutorily created " 'perpetual lien on and against the property served.' " *North Washington Water & Sanitation Dist.* v. *Majestic S. & L. Assn.* (1979), 42 Colo. App. 158, 159, 594 P. 2d 599, 600.

"The importance of a system of tracing titles and placing liens on record was recognized by the Ohio lawmakers at an early day, and from the beginning of the state government statutes have existed requiring conveyances to be recorded. The policy of these recording laws is plain and unmistakable, and they are to be construed and applied so as to effectuate the object of the legislature in adopting them. The object is to furnish the best and most easily accessible evidence of titles to real estate, so that subsequent purchasers or lienors may be informed and have notice of any prior conveyances or encumbrances. * * *" (Footnotes omitted.) 47 Ohio Jurisprudence 2d (1961) 53, 55, Records and Recording, Section 23.

Further, "grants of corporate power, as against the rights of the public, are to be strictly construed. * * *" (Footnote omitted.) 21 Ohio Jurisprudence 3d (1980) 116, Counties, Townships, and Municipal Corporations, Section 660.

That there is a significant exclusion in the municipal sewer-lien statute is evident upon examination of R.C. 6117.02 which requires sewage charges, as to county-owned sewerage systems, to be placed upon the real property tax duplicate in order to become a lien.

Appellant challenges the self-executing lien concept as being violative of the Ohio Constitution, more particularly Article XVIII. We do not reach the constitutional issue for the reason that we conclude the trial court erred as a matter of law in concluding that R.C. 729.49 is self-executing and amounts to a perfected lien for purposes of determining priorities without any filing or notification upon the county auditor or other records of the county in which the real estate is situated.

For the reasons stated heretofore,

we sustain the assignment of error, reverse the priority judgment of the Richland County Court of Common Pleas and remand this cause to said court for further proceedings according to law.

*Judgment reversed and cause remanded.*

PUTMAN, P.J., and HOFFMAN, J., concur.