In re Jamal T. SCOTT and Debra
L. Scott, Debtors.

William Todd Drown, Trustee,
Plaintiff,

v.

Wells Fargo Bank, N.A.,
et al., Defendants.

In re Amelia F. Bridgeforth, Debtor.

William Todd Drown, Trustee,
Plaintiff,

v.

Colony Mortgage Corp.,
et al., Defendants.

In re Steven W. Walsh and Mandy
A. Walsh, Debtors.

William Todd Drown, Trustee,
Plaintiff,

v.

America's Wholesale Lender,
et al., Defendants.

In re Steven W. Walsh and Mandy
A. Walsh, Debtors.

William Todd Drown, Trustee,
Plaintiff,

v.

Countrywide Home Loans, Inc.,
et al., Defendants.

In re John Thomas Hilliard and
Amanda Lynn Hilliard,
Debtors.

William Todd Drown, Trustee,
Plaintiff,

v.

Wells Fargo Bank, N.A.,
et al., Defendants.

In re Gary Edward Warne and Karen
Lynn Warne, Debtors.

Clyde Hardesty, Trustee, Plaintiff,

v.

Small Business Administration,
et al., Defendants.

In re John J. Hynes and Janice
L. Hynes, Debtors.

Clyde Hardesty, Trustee, Plaintiff,

v.

Charter One Bank, N.A.,
et al., Defendants.

In re Diane A. Rucker, Debtor.

William Todd Drown, Trustee,
Plaintiff,

v.

Aurora Loan Services, LLC,
et al., Defendants.

In re Dale A. Burnett and Tricia
R. Burnett, Debtors.

Clyde Hardesty, Trustee, Plaintiff,

v.

Option One Mortgage Corp.,
et al., Defendants.

Bankruptcy Nos. 07–57624, 07–58047,
08–51382, 08–53550, 08–52647, 08–
52032, 08–56072, 08–61545.
Adversary Nos. 07–2913, 07–2915, 08–
2085, 08–2086, 08–2158, 08–2172,
08–2173, 08–2255, 09–2087.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division at Columbus.

March 2, 2010.

William Todd Drown, Folland & Drown, LPA, Mount Vernon, OH, for Plaintiffs.

Maria C. Mariano Guthrie, Sikora Law LLC, Bethany Hamilton, United States Attorney's Office, Stephen A. Santangelo, Amelia A. Bower, Columbus, OH, Cynthia M. Fischer, Nathan L. Swehla, Cincinnati,

OH, Christopher W. Peer, Friedman Yaksic, Brooke Turner–Bautista, Cleveland, OH, Michael J. Sikora, III, Mentor, OH, Michelle Polly–Murphy, Wilmington, OH, Michael A. Northrup, Zanesville, OH, for Defendants.

Jeremy Dennis, Galloway, OH, pro se.

Christina R. Dennis, Galloway, OH, pro se.

Franklin County Treasurer, Columbus, OH, pro se.

Vicki J. Schumick, pro se.

David J. Schumick, pro se.

Barbara D. Lucas, pro se.

Timothy J. Lucas, pro se.

Patrick R. Lucas, pro se.

Prudence Lucas, pro se.

Estate of Martha L. Lucas, pro se.

Unknown Heirs and Spouses of Vicki J. Schumick (aka Vicki L. Schumick), David J. Schumick, Timothy J. Lucas, Barbara D. Lucas, Patrick R. Lucas, and Prudence Lucas, pro se.

David F. Miller, Pleasantville, OH, pro se.

Kathy R. Miller, Pleasantville, OH, pro se.

Quality Home Investment Group, Columbus, OH, pro se.

Baltimore Land Management, Inc., Baltimore, OH, pro se.

Charles Shane Stack, Fleming, OH, pro se.

Unknown Spouse of Charles Shane Stack, Fleming, OH, pro se.

Mortgage Electronic Registration Systems, Inc., Vienna, VA, pro se.

Chris Wigal Zanesville, OH, pro se.

Unknown Spouse of Chris Wigal, Zanesville, OH, pro se.

Ronald McCarty, Johnstown, OH, pro se.

Wendy McCarty, Johnstown, OH, pro se.

Before: CHARLES M. CALDWELL, JOHN E. HOFFMAN, JR. and C. KATHRYN PRESTON, Bankruptcy Judges.

### MEMORANDUM OPINION ON MOTIONS FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I. Introduction

Chapter 7 trustees William Todd Drown and Clyde Hardesty ("Trustees") seek to bring various parcels of real property located in Ohio into the respective estates of the debtors in the above-captioned cases ("Debtors") free and clear of mortgages the Debtors granted on the properties prior to the filing of their bankruptcy petitions. The Trustees contend that the deeds from the grantors ("Grantors") to the Debtors were defectively executed, that as a result the Debtors did not obtain title to the properties, and that the mortgages therefore are avoidable or void under 11 U.S.C. § 544(a). The adversary proceedings include (a) quiet title actions against the Grantors and (b) actions against the holders of the mortgages as well as Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Mortgagees")[1] based on the Trustees'

---

1. The defined term "Mortgagees" includes MERS for convenience only. "MERS is simply a company created to track ownership interests in residential mortgages[.] [M]ortgage lenders subscribe to MERS and agree to appoint MERS to act as their common agent on mortgages they register with the MERS system." *Countrywide Home Loans, Inc. v.*

status as judicial lien holders under § 544(a)(1) and bona fide purchasers under § 544(a)(3).

The Trustees are seeking summary judgment against the Mortgagees based on the purported defects in the execution of the deeds.[2] The Mortgagees do not concede that the deeds were defectively executed, but have agreed that the Court may presume them so for purposes of summary judgment. Assuming without deciding that the deeds were defectively executed, the Court concludes that, as a matter of Ohio law, (1) the Grantors conveyed equitable interests in the properties to the Debtors, (2) the Debtors granted liens on their equitable interests in the properties to the Mortgagees, (3) the Mortgagees obtained interests in the properties from the Debtors and (4) the interests obtained by the Mortgagees were perfected through the proper execution and recording of the mortgages. Under Ohio law, no one—including judicial lien holders and bona fide purchasers—can avoid or otherwise take free of perfected interests in real property. Thus, the Court concludes that the Trustees cannot prevail solely because of defects, if any, in the execution of the deeds.

## II. Jurisdiction

The Court has jurisdiction to hear and determine these consolidated adversary proceedings pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. These are core proceedings. *See* 28 U.S.C. § 157(b)(2)(K).

## III. Procedural Background

While participating in pre-trial conferences, the Trustees and the Mortgagees identified the legal issue of whether a trustee may avoid a mortgage on real property based solely on a defect in the execution of the deed by which the property was conveyed to a debtor ("Defective Deed Issue"). Because this legal issue is common to each of the adversary proceedings, the Court advised the litigants that, in the interest of judicial economy, it intended to consolidate the proceedings for the purposes of jointly conducting a hearing and ruling on the Defective Deed Issue. No party in interest objected to the proposed consolidation. By an order entered on January 21, 2009, the Court established a briefing schedule and set a date for oral argument.[3]

On March 17, 2009, the Trustees filed motions seeking summary judgment on the Defective Deed Issue. Certain of the Mortgagees—America's Wholesale Lender ("AWL"), Countrywide Home Loans, Inc. ("Countrywide"), MERS and Wells Fargo Bank, N.A. ("Wells Fargo")—also filed cross-motions for summary judgment. After the other adversary proceedings were consolidated, one of the Mortgagees, Op-

---

*Wilkerson (In re O'Kelley)*, 420 B.R. 18, 26 (D.Haw.2009) (internal quotation marks omitted). *See also Serena Neighbors v. Mortgage Elec. Registration Sys., Inc.*, 2009 WL 192445 at *1 (N.D.Cal. Jan.27, 2009) ("MERS is an electronic registration and tracking system that was formed to track both beneficial ownership interests in, and servicing rights to, mortgage loans as they change hands through the life of a loan.").

2. The Trustees are not currently seeking summary judgment against the Grantors.

3. The Court derives its authority to issue this memorandum opinion from 28 U.S.C. § 132(c), under which the judicial power of the Court may be exercised by a single judge, "[e]xcept as otherwise provided by law, or rule or order of court...." 28 U.S.C. § 132(c). *See also Rhiel v. OhioHealth Corp. (In re Hunter)*, 380 B.R. 753, 758 n. 5 (Bankr. S.D.Ohio 2008); *Drown v. ESB (In re Farley)*, 387 B.R. 751 (Bankr.S.D.Ohio 2008) (granting summary judgment in favor of defendants on trustee's attempt to avoid their security interests using the strong-arm power).

tion One Mortgage Corp. ("Option One"), agreed to consolidate its adversary proceeding (Adv. Pro. No. 09–2087) as well, and, on May 4, 2009, the Court entered an order consolidating it with the others for the sole purpose of hearing and deciding the Defective Deed Issue. The parties have not filed motions for summary judgment in Adv. Pro. No. 09–2087.

On May 12, 2009, Judges Caldwell, Hoffman and Preston heard oral argument on the Defective Deed Issue. Present at the oral argument were the following attorneys: William Todd Drown ("Drown") and Nancy Willis for the Trustees; Amelia Bower for Aurora Loan Services, LLC ("Aurora"), Charter One Bank, N.A. ("Charter One"), Colony Mortgage Corp. ("Colony"), Option One and Wells Fargo; Maria Guthrie for AWL, Countrywide, MERS and the Small Business Administration ("SBA"); Michelle Polly–Murphy for AWL, MERS and Wells Fargo; Stephen Santangelo for Irwin Union Bank and Trust Company; and Brittany Griggs for AWL, Countrywide and MERS.

Following oral argument, each of the parties identified above, as well as Citimortgage, Inc. ("Citimortgage")—an intervenor in Adv. Pro. No. 07–2915 along with MERS[4]—filed post-hearing briefs even though the Court had taken the matter under advisement without establishing a post-hearing briefing schedule.[5] In their initial post-hearing brief, the Trustees for the first time argued that the mortgages were recorded outside their chain of title—as hypothetical bona fide purchasers of the properties—and that the Trustees therefore lacked constructive notice of the Mortgagees' interests. *See* Doc. 36 in

Adv. Pro. No. 08–2085 at 14–16. Because the Trustees had not previously made this argument, the Court entered orders in the various adversary proceedings providing the Mortgagees until August 5, 2009 to file briefs addressing the argument and the Trustees until August 15, 2009 to file their reply briefs.

## IV. Arguments of the Parties

### A. Arguments Based on § 544(a)

In support of their request for summary judgment, the Trustees rely on § 544(a), which states:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits

---

4. *See* Doc. 40 in Adv. Pro. No. 07–2915.

5. On May 13, 2009, Aurora, Charter One, Citimortgage, Colony, MERS, Option One and Wells Fargo filed a combined supplemental brief. On May 16, 2009, the Trustees filed

their initial supplemental brief. *See* Doc. 36 in Adv. Pro. No. 08–2085. On May 27, 2009, AWL, Countrywide, MERS and the SBA filed a supplemental brief. *See* Doc. 37 in Adv. Pro. No. 08–2085.

such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists. 11 U.S.C. § 544(a).

In their complaints, the Trustees relied exclusively on § 544(a)(3) and attempted to add § 544(a)(1) as a ground for avoidance only in their replies in support of their motions for summary judgment. In the interest of judicial economy and because the Mortgagees will not be prejudiced by the Court's considering each of the Trustees' arguments, however, this Memorandum Opinion covers both of the subsections of § 544(a) on which the Trustees rely— § 544(a)(1) and (3)—as well as § 544(a)(2).

As the Court will now outline, the legal arguments put forth by the Trustees are hardly a model of clarity or consistency. Initially, the Trustees sought to avoid the mortgages as *hypothetical* bona fide purchasers and, in the alternative, as *subsequent* bona fide purchasers. Along these lines, the Trustees stated in their motions for summary judgment that their "strong-arm powers allow them to avoid transfers of real property as hypothetical bona fide purchasers or, alternatively, as subsequent bona fide purchasers from the debtor pursuant to 11 U.S.C. § 544(a)(3)." Doc. 29 in Adv. Pro. No. 08–2085 at 3. Similarly, Drown stated during oral argument: "Your Honors are very aware of the trustee's strong-arm powers, which allow him

to avoid the transfers of real property as a hypothetical bona-fide purchaser or, alternatively, as a subsequent bona-fide purchaser from the debtor pursuant to 11 U.S.C. 544(a)(3). . . ." Transcript of May 12, 2009 hearing ("Transcript") at 13:24–14:3. The distinction Drown appeared to be making between *hypothetical* bona fide purchasers and *subsequent* bona fide purchasers was curious because "the trustee hypothetically purchases the debtor's property at the commencement of the bankruptcy case," *Gregory v. Ocwen Fed. Bank (In re Biggs),* 377 F.3d 515, 517 (6th Cir.2004), and § 544(a)(3) governs only prepetition, not postpetition, transfers.[6] Under § 544(a)(3), therefore, a trustee will always be a subsequent bona fide purchaser; there is no distinction between a *hypothetical* bona fide purchaser and a *subsequent* bona fide purchaser in the context of § 544(a)(3).

As discussed below in Part IV.B, the Trustees have taken the position that the mortgages did not effectuate transfers of property interests—more specifically, lien interests—from the Debtors. Thus, the Trustees also have taken the position that § 544(a)(3) "confer[s] on the trustee two powers: the [transfer] avoidance powers ('may avoid') and the 'status' powers ('rights and powers of')." Doc. 41 in Adv. Pro. No. 08–2085 at 7 n. 2. Although trustees clearly have "status" powers in addition to the power to avoid transfers under § 544(a)(1) and (2),[7] a split of authority exists on the issue of whether trustees

---

6. *See Rieser v. Dinsmore & Shohl, LLP (In re Troutman Enters., Inc.),* 356 B.R. 786 (table), 2007 WL 205640 at *10 (6th Cir. BAP Jan. 26, 2007) (holding that "§ 544 [applies] to prepetition transfers only"); *Consol. Partners Inv. Co. v. Lake,* 152 B.R. 485, 490 (Bankr. N.D.Ohio 1993) ("[Section 544(a)(3)] is directed towards secret or nondisclosed claims which were in place prior to the bankruptcy filing—not to postpetition transfers.").

7. *See, e.g., Rieser v. Hayslip (In re Canyon Sys. Corp.),* 343 B.R. 615, 657 (Bankr.S.D.Ohio 2006) (holding that "[b]ecause § 544(b)(1) provides only the power of avoidance, it does not confer authority on the [t]rustee to pursue state law damage claims" but that the trustee could pursue such claims under § 544(a)(1) or (2) if the claims could have been asserted by the debtor corporation).

have rights and powers beyond the power to avoid transfers under § 544(a)(3). *Compare Belisle v. Plunkett,* 877 F.2d 512, 515 (7th Cir.1989) ("Section 544(a)(3) allows the trustee to have a bona fide purchaser's rights *or* avoid a transfer, so a 'transfer' by the debtor cannot be a necessary condition of the exercise of the strong-arm power.")[8] *with Mills v. Brown (In re Brown),* 182 B.R. 778, 781 (Bankr. E.D.Tenn.1995) ("[T]he two grants of power in § 544(a), the avoidance powers and the status powers ('rights and powers of'), do not both descend into subparagraph (3), which is limited by its language to situations involving real estate transfers by the debtor."). There is no controlling decision from a court within this district or the Sixth Circuit on the issue. For purposes of this memorandum opinion, the Court will assume without deciding that § 544(a)(3) provides trustees with rights and powers beyond the power to avoid transfers from a debtor.

The Mortgagees argue that § 544(a)(3) does not apply in these adversary proceedings because the deeds did not effectuate transfers from the Debtors, but instead effectuated transfers from the Grantors. *See* Doc. 37 in Adv. Pro. No. 08–2085 at 10; Doc. 27 in Adv. Pro. No. 08–2158 at 8. The pending motions for summary judgment, however, seek judgment on the Trustees' attempt to negate the transfers effectuated by the mortgages, not the transfers effectuated by the deeds. And, as the Court will discuss in Part V.B.3 below, the mortgages effectuated transfers of interests—lien interests in the properties—from the Debtors. Thus, even if the Court's assumption—that a transfer from a debtor is not a prerequisite to the applicability of § 544(a)(3)—is incorrect, the subsection nonetheless would apply here.

### B. Arguments Based on the Interests of the Debtors and the Mortgagees

The Trustees initially took the position that the deeds conveyed equitable interests in the properties to the Debtors. *See* Doc. 29 in Adv. Pro. No. 08–2085 at 9 ("From the 1820s to the present date, the Supreme Court of Ohio has held in numerous deed cases that *a defectively executed deed does not convey legal title but is treated as an equitable interest in the property or as an agreement to convey the property.*" (emphasis in original)). In their reply in support of summary judgment, the Trustees reiterated the position that the Debtors "acquired equitable interests in the real properties under the defec-

---

**8.** In *Belisle,* the issue was whether a trustee may use § 544(a)(3) to bring into the bankruptcy estate property that the debtor holds in constructive trust for victims of the debtor's fraud. In that case, a real estate entrepreneur had formed partnerships to raise money for the acquisition of a leasehold interest in a shopping center but, rather than purchasing the leasehold in the name of the partnerships, he used the partnerships' funds to purchase the leasehold in his own name, and then dealt with the leased premises and its tenants as though he alone owned the leasehold. After the entrepreneur filed a bankruptcy petition, the trustee sought to bring the leasehold interest into the estate under § 544(a)(3) on the grounds that, under applicable nonbankruptcy law, "[a] bona fide purchaser of the lease-

hold interest, without notice of the earlier claim [of the partners], would take ahead of a person [such as a partner] who has not recorded his entitlement." *Id.* at 514. Among other things, the defrauded partners argued that § 544(a)(3) did not apply because the entrepreneur "did not transfer the ... leasehold, and there is therefore nothing for the Trustee to avoid." *Id.* The Seventh Circuit held that § 544(a)(3) applies *even when there is no transfer from the debtor* for the trustee to avoid. *See id.* at 515 ("The statute mentions 'transfer' only in the sense of the *hypothetical* transfer that measures the trustee's rights: if a hypothetical bona fide transferee from the debtor would come ahead of the 'true' owner's rights, then the trustee takes ahead of the true owner.").

tive deeds." Doc. 32 in Adv. Pro. No. 08–2085 at 5. But in addressing the issue of the nature of the Debtors' interests in the properties in their second post-hearing brief, the Trustees reversed field. Citing *Chase Home Fin., LLC v. Banker,* 2009 Ohio 2650, 182 Ohio App.3d 546, 913 N.E.2d 1016 (2009), an Ohio court of appeals decision holding that a mortgage is a nullity if the purported mortgagor held neither legal nor equitable title to the property at the time the mortgage was given, the Trustees took the position that "the debtors did not hold *legal or equitable title* when they executed mortgages on the properties to the respective Defendants." *See* Doc. 41 in Adv. Pro. No. 08–2085 at 6 (footnote omitted). This is inconsistent with the position the Trustees initially took in their motions for summary judgment and with the allegations in certain of the complaints that "Debtors therefore have an equitable interest in the Real Estate." *See* Doc. 1 in Adv. Pro. No. 08–2085 ¶ 15.

The Trustees' arguments concerning the Debtors' ability to grant mortgages on the properties also have been hopelessly muddled and inconsistent. Initially, they argued that a party lacking legal title to real property is unable to encumber the property. *See* Doc. 29 in Adv. Pro. No. 08–2085 at 18 ("[I]f a debtor failed to obtain legal title to the real property because of a defective deed, the debtor could not encumber the property by mortgage, and any attempt to do so would be null and void as a matter of law."). They later retreated from their position, stating instead that the Debtors "could only encumber their equitable interests in the properties." Doc. 32 in Adv. Pro. No. 08–2085 at 5. Yet, in a post-hearing brief, the Trustees flip-flopped again, arguing that "if the interest obtained by the debtors is a cause of action in contract or a vendee's lien ... [then] neither of these interests is an interest in property and therefore could not

be mortgaged." Doc. 36 in Adv. Pro. No. 08–2085 at 8–9. In the alternative, the Trustees argued that, even if the Court were to hold that the Debtors had obtained equitable interests in the properties by virtue of the deeds and could mortgage those interests, the Mortgagees received only equitable mortgages on the property that would be inferior to the Trustees' equitable interests. *See id.* at 14 ("The Trustees have asked the Court to quiet title as part of the relief sought in these adversary proceedings. Because the Trustees have the *potential* to perfect their equitable interests and 'call in' the legal estate, the Trustees' equitable interests in the property are superior to those of Defendants."). In short, the Trustees' arguments with respect to the nature of the Debtors' interests in the properties and, in turn, the extent of the Mortgagees' interests, have been maddeningly inconsistent and difficult to decipher.

The Trustees also expressed conflicting views regarding the Mortgagees' interests during oral argument, seesawing from the position that the mortgages "don't create any interest," Transcript at 18:9, to the position that the Mortgagees "may have an equitable interest" in the real property, *id.* at 18:19, back to the position that "even though the defendants' mortgages are properly recorded, there's no interest that's been conveyed to them." *Id.* at 19:9–11. On the one hand, the Trustees argued that the Debtors could not have created liens on their equitable interests when they granted the mortgages, *see id.* at 19:1–8; on the other hand, they argued that each of the mortgages "operates only to create a lien upon the mortgagor's equitable interest and is, therefore, an equitable mortgage." *Id.* at 42:9–11.

In response to the Trustees' various arguments based on the interests of the Debtors and the Mortgagees, certain

Mortgagees contend that the deeds provided the Debtors with equitable interests in the properties but not legal title, while other Mortgagees argue that the deeds provided the Debtors both legal and equitable interests in the properties. According to each of the Mortgagees, the Debtors granted mortgages on their interests in the properties, and those mortgages were recorded and perfected under Ohio law.

## C. Arguments Based on the Chain of Title

The Trustees propounded a new argument in their initial post-hearing brief—that they should prevail because the mortgages were recorded outside of the chain of title of a bona fide purchaser. As discussed below in Part V.B.3.f.ii, the Trustees developed this argument in their second post-hearing brief. Disputing the chain-of-title argument, the Mortgagees contend that, because the mortgages themselves were properly executed and recorded, the mortgages provided the Trustees with constructive notice of the Mortgagees' interests.[9]

## V. Legal Analysis

## A. Summary Judgment is Appropriate.

Under Fed.R.Civ.P. 56(c), made applicable in these adversary proceedings by Fed. R. Bankr.P. 7056, summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); *see*

also *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 577 (6th Cir.2007). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

During oral argument, the Trustees—despite having consented to the consolidation of these adversary proceedings for the purpose of summary judgment and despite having filed summary judgment motions—questioned whether it was procedurally proper for the Court to grant summary judgment. *See* Transcript at 6:1–5 ("If [the Trustees lose and] we took it up on appeal, there would have been no underlying determination by the Court as to whether or not we had defective deeds to begin with and we're concerned that this might then be an advisory opinion."). The Court disagreed with the suggestion that its opinion would be advisory, *see id.* 8:19–10:2, and the Trustees did not pursue their position further during oral argument or in their post-hearing briefs.

The initial position maintained by the Trustees in this regard—that the Court's opinion would be merely advisory—was incorrect. The parties have consented to the Court's assuming for the purposes of summary judgment that the deeds were defectively executed.[10] Thus, the Defec-

---

9. The Mortgagees also argue that the doctrines of estoppel by deed and estoppel by mortgage preclude the Trustees from avoiding the mortgages. Given its rulings on the parties' other arguments, however, the Court need not address these estoppel-based arguments.

10. The Trustees did not allege in their summary judgment motions that the mortgages granted by the Debtors were defectively executed. In their complaints, the Trustees alleged problems with the mortgages in only two of the adversary proceedings, but neither potential problem involves defective execution per se. In Adv. Pro. No. 07–2913, Drown

tive Deed Issue is a purely legal, threshold issue between the parties that the Court may fully adjudicate at this time. *See United States v. Sunoco, Inc.,* 501 F.Supp.2d 641, 655 (E.D.Pa.2007) ("It is not premature or advisory to settle [a] purely legal question [where] [t]he matter is a live, threshold issue between these parties that can be fully adjudicated at this point in the litigation."). The Court may decide a purely legal question on summary judgment based on facts assumed to exist. *See Liquidation Comm. v. Binsky & Snyder, Inc. (In re J.A. Jones, Inc.),* 361 B.R. 94, 101 (Bankr.W.D.N.C.2007). In *J.A. Jones,* the bankruptcy court consolidated several motions for summary judgment brought by defendants in multiple preference actions. The court noted that certain arguments "require[ ] an analysis of the facts of the particular proceeding and their application to the lien law of the jurisdiction where the project lay[,]" which placed the arguments "beyond the scope of this consolidated proceeding." *Id.* at 101. The parties, however, "stipulated to a basic set of common facts and agreed to determine a common, but limited, legal issue: Would the release and waiver of an inchoate lien right be a bar and/or defense to a preference action?" *Id.* The court "assume[d] the existence and validity of the asserted inchoate lien rights under state law" and entered summary judgment on the issue of whether those lien rights made the holders secured creditors of the debtors. *Id.* The adversary proceedings before the Court are in a similar posture. Rendering a

decision on the validity of the execution of the deeds would require a factual analysis of each deed. The parties, however, have agreed that the Court may assume for the purposes of summary judgment that the deeds were defectively executed. There is, therefore, no genuine issue as to any material fact with respect to the Defective Deed Issue.

Under Sixth Circuit law, it also is of no moment that certain of the Mortgagees did not file cross-motions for summary judgment or that no party filed a motion for summary judgment in Adv. Pro. No. 09–2087. *See K.E. Res., Ltd. v. BMO Fin. Inc. (In re Century Offshore Mgmt. Corp.),* 119 F.3d 409, 412 (6th Cir.1997) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In *Century Offshore Management,* the Sixth Circuit upheld the bankruptcy court's grant of summary judgment against a party—even though the opposing party had not requested it—in light of the fact that the parties had "fully briefed the determinative issue" and had conceded that there were no genuine issues as to any material facts. *See Id.* at 412 (" 'Federal Courts have long recognized that if there is no genuine issue as to any material fact the court may enter summary judgment, sua sponte.' " (quoting *Ledford v. Tiedge (In re Sams),* 106 B.R. 485, 491 (Bankr.S.D.Ohio 1989))). *See also Kistner v. Califano,* 579 F.2d 1004, 1006 (6th Cir.1978) ("There is some authority for the proposition that a district court should not enter a summary

---

alleges that the mortgage originally executed by Jamal T. Scott did not identify Scott as a mortgagor and that a mortgage that was rerecorded to add him as mortgagor did so without the re-acknowledgment of his signature; the allegation is that both mortgages stated that Scott was signing solely to release his dower interest. *See* Doc. 4 (amended complaint) in Adv. Pro. No. 07–2913. Wells Fargo denies that Scott signed solely to release

his dower interest. *See* Doc. 18 in Adv. Pro No. 07–2913. The original mortgage at issue in Adv. Pro. No. 07–2915 included an incorrect lot number in the legal description and was re-recorded to include the correct lot number. Drown alleges that "[n]either the original Mortgage nor the re-filed Mortgage describe the Real Estate owned by the Debtor." Doc. 1 in Adv. Pro. No. 07–2915 ¶ 19.

judgment *sua sponte* against a party, but should 'invite' the appropriate party to file a motion under Rule 56, or inform the parties that it will treat a previously filed Rule 12(b)(6) or 12(c) motion as a motion for summary judgment, if it thinks the case is ready for summary disposition. However, we do not require the district courts of this circuit to follow such a procedure as long as they afford the party against whom summary judgment will be entered advance notice as required by Rule 56 and an adequate opportunity to show why summary judgment should not be granted." (citations omitted)).

These standards are satisfied here. First, the parties received advance notice of—and consented to—the Court's ruling on the Defective Deed Issue on summary judgment. Second, the parties participated in oral argument and fully briefed the Defective Deed Issue by filing briefs both before and after the oral argument. Third, although disputes exist regarding other issues, the parties concede that there are no disputed material facts bearing on the Defective Deed Issue.

**B. Defective Execution of the Deeds Does Not Provide a Basis for Avoidance of the Mortgages.**

**1. Section 544(a)**

■ In relying on § 544(a), the Trustees are attempting to wield the strong-arm power, which is "[o]ne of the most powerful weapons in a bankruptcy trustee's arsenal[.]" *Taxel v. Chase Manhattan Bank, USA, N.A. (In re Deuel)*, 361 B.R. 509, 511 (9th Cir. BAP 2006), *aff'd* 594 F.3d 1073 (9th Cir.2010). The strong-arm power "gives a bankruptcy trustee the rights and powers of a judicial lien creditor or a bona fide purchaser of real property and allows the trustee to avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by a judicial lien creditor or a bona fide purchaser of real property." *Craig v. Seymour (In re Crabtree)*, 871 F.2d 36, 37 (6th Cir.1989).

■ Section 544(a)(1) grants each of the Trustees "the status of a hypothetical lien creditor who is deemed to have perfected his interest as of the date of the filing of the bankruptcy petition[,]" *Rogan v. Bank One, N.A. (In re Cook)*, 457 F.3d 561, 564 (6th Cir.2006), and also grants the Trustees the power to avoid transfers of property that could be avoided by a judicial lien creditor. *See Palmer v. Washington Mut. Bank (In re Ritchie)*, 416 B.R. 638, 643 (6th Cir. BAP 2009) ("Pursuant to 11 U.S.C. § 544(a)(1), a bankruptcy trustee holds the status of a hypothetical judgment lien creditor who is deemed to have perfected his interest as of the date of the filing of the bankruptcy petition."). That is, "[t]he strong-arm powers of section 544(a)(1) give the trustee the status and power of a creditor who obtains a judgment lien against property of the debtor at the time the petition is filed." *In re Charlton*, 389 B.R. 97, 103 (Bankr.N.D.Cal. 2008). A perfected mortgage is superior to a later-recorded judicial lien. A trustee, therefore, cannot avoid a mortgage under § 544(a)(1) if the mortgagee's interest is perfected. *See Cook*, 457 F.3d at 565–66 ("The first issue . . . is whether . . . [each] mortgage is perfected and therefore superior to Rogan's interest as a judicial lien creditor."); *In re Weinpert*, 2007 WL 509777 at *2 (Bankr.N.D.Ohio Feb.13, 2007) ("As a matter of law, [the] earlier recorded mortgage lien has priority over the later obtained judgment lien."). *See also Stubbins v. Wells Fargo Bank, N.A. (In re Gibson)*, 395 B.R. 49, 54 (Bankr. S.D.Ohio 2008) ("[T]o defeat the trustee's status, a creditor must possess a perfected security interest on the date the debtor

filed a bankruptcy petition." (internal quotation marks omitted)).

■ Under § 544(a)(2), the trustee has the rights and powers of an unsatisfied execution creditor, a hypothetical "creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time...." 11 U.S.C. § 544(a)(2). A creditor obtaining such an execution could not use it to avoid or otherwise obtain priority over prior perfected mortgages. *See Fundex Capital Corp. v. Balaber–Strauss (In re Tampa Chain Co.)*, 53 B.R. 772, 777–78 (Bankr.S.D.N.Y.1985) (holding that unsatisfied execution creditor had rights in property "superior to all but prior secured creditors and bona fide purchasers for value").

■ Likewise, the holder of a mortgage that is perfected as of the petition date will prevail over a trustee qua hypothetical bona fide purchaser. Under § 544(a)(3), a trustee has the status of "a bona fide purchaser of real property ... from the debtor ... that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case...." 11 U.S.C. § 544(a)(3). Under this section, "the trustee hypothetically purchases the debtor's property at the commencement of the bankruptcy case, then determines whether [the property] is subject to any valid prior interests." *Biggs*, 377 F.3d at 517. *See also Geygan v. World Savs. Bank, FSB (In re Nolan)*, 383 B.R. 391, 397 (6th Cir. BAP 2008) ("The legal fiction created by [Section 544(a) ] assumes a transfer from the debtor to a bona fide purchaser on the date of filing. The trustee is then clothed with whatever legal rights the bona fide purchaser would possess." (internal quotation marks omitted)). "As a hypothetical bona fide purchaser, the trustee ... is deemed to have conducted a title search, paid value for the property and perfected its interest as a legal title holder as of the date of the commencement of the case." 5 *Collier on Bankruptcy* ¶ 544.06 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2007). The deemed title search, however, provides a trustee with constructive notice of properly executed and recorded real-estate instruments only, not of improperly executed or unrecorded ones. *See Zaptocky*, 250 F.3d at 1027–28 (holding that the trustee did not have constructive knowledge of an improperly executed mortgage because Ohio law provided that an improperly executed mortgage does not provide constructive notice to a subsequent bona fide purchaser); *Porter Drywall Co. v. Haven, Inc. (In re Haven, Inc.)*, 326 B.R. 901 (table), 2005 WL 927666 at *4 (6th Cir. BAP Apr. 7, 2005); *Logan v. Universal Credit Union (In re Bozman)*, 2007 WL 4246279 at *4 (S.D.Ohio Nov.28, 2007) (same); *Field v. Wheeler (In re Wheeler)*, 2006 WL 1645214 at *4 (S.D.Ohio June 12, 2006) (same).

■■ Despite its scope and reach, the strong-arm power " 'does not clothe a trustee with [the] protective mantle [of a bona fide purchaser] if there was no way, under the applicable state law, that anyone could attain the status of a bona fide purchaser.' " *Treinish v. Norwest Bank Minnesota, N.A. (In re Periandri)*, 266 B.R. 651, 655 (6th Cir. BAP 2001) (quoting *Condren v. Harrison (In re Borison)*, 226 B.R. 779, 787 (Bankr.S.D.N.Y.1998)). "[T]he Bankruptcy Code's strong arm clause does not immunize a trustee who has constructive knowledge of a prior mortgage...." *Zaptocky*, 250 F.3d at 1027. *See also Anderson v. Conine (In re Robertson)*, 203 F.3d 855, 864 (5th Cir.2000) ("The trustee, just as a hypothetical purchaser, is amenable to state recording statutes and other

nonbankruptcy laws which would prevent him from properly perfecting [a] transfer from the debtor at the time of the commencement of the case. Thus, although section 544 provides that a trustee's actual knowledge is not relevant, a trustee is still bound by the state law regarding recordation and constructive notice, as well as other state law limitations upon bona fide third party purchaser status." (citations omitted)).

■ As discussed below, neither bona fide purchasers, unsatisfied execution creditors nor holders of judicial liens take free of perfected interests in real property under Ohio law. The Mortgagees, therefore, will withstand the attacks the Trustees are mounting from their positions as bona fide purchasers and holders of judicial liens if the mortgages are perfected. That the mortgages can withstand such attacks if they are perfected makes sense because "[t]he purpose of the strong arm clause is to cut off unperfected security interests, secret liens and undisclosed prepetition claims against the debtor's property as of the commencement of the case." *Canney v. Merchants Bank (In re Canney)*, 284 F.3d 362, 374 (2d Cir.2002) (internal quotation marks omitted). *See also Deuel*, 361 B.R. at 511 ("[Using the strong-arm power], [t]rustees for decades have defeated unperfected liens and unrecorded transfers, all to the benefit of unsecured creditors in bankruptcy.").

## 2. Ohio Law

■ Applicable state law governs questions not directly addressed by the Bankruptcy Code. *See Reinhardt v. Vanderbilt Mortgage & Fin., Inc. (In re Reinhardt)*, 563 F.3d 558, 563 (6th Cir.2009) ("Where the [Bankruptcy] Code does not specifically address an issue that arises in bankruptcy, the bankruptcy court looks to state law, to the extent that it does not conflict with the [B]ankruptcy [C]ode[.]"

(internal quotation marks omitted)). *See also Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In particular, the validity and priority of a mortgage against a bankruptcy trustee asserting his or her rights under § 544(a) depends on the law of the jurisdiction where the real property is located. *See Zaptocky*, 250 F.3d at 1024 ("Since this mortgage concerns real property located in Ohio, this inquiry is governed by Ohio law."). The law of Ohio applies in these adversary proceedings because the properties are all located there.

■ Certain provisions of the Ohio Revised Code are relevant to the outcome here. In applying statutory law, the Court notes "the restricted relationship a federal court has in applying a state statute when that statute has been the subject of interpretation and application by the state's highest court." *Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.)*, 313 B.R. 732, 735–36 (Bankr.S.D.Ohio 2004). The state statute "must be given the meaning and effect attributed to it by the highest court of the state, as if the state court's decision were literally incorporated into the enactment, whatever the federal tribunal's opinion as to the correctness of the state court's views." *Burns Mortgage Co. v. Fried*, 292 U.S. 487, 494, 54 S.Ct. 813, 78 L.Ed. 1380 (1934). In the absence of controlling state case law, by contrast, the Court's role is to "ascertain how [the Ohio Supreme Court] would rule if it were faced with the issue." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999). *See also In re Kimble*, 344 B.R. 546, 552 (Bankr.S.D.Ohio 2006) ("[T]he Court must make the best prediction, even in the absence of direct state precedent, of what the [state] Supreme Court would do if confronted with [the] question." (internal quotation marks omitted)). In making this prediction, "'the Court may rely upon analogous cases and *relevant dicta* in the decisional law of the State's highest court,

opinions of the State's intermediate appellate courts to the extent that they are persuasive indicia of the State Supreme Court direction, and persuasive opinions from other jurisdictions, including the 'majority rule.'" *Id.* (quoting *Estate of Owensby v. City of Cincinnati*, 385 F.Supp.2d 626, 631 (S.D.Ohio 2004) (alterations in original)). While engaged in this predictive process, "[t]he Court must 'employ the appropriate [state] methodology to decide th[e] issue the way that [it] believe[s] the Supreme Court of [the state] would decide it.'" *Id.* (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir.2003)). "In interpreting a statute, a court's principal concern is the legislative intent in enacting the statute." *Carnes v. Kemp*, 104 Ohio St.3d 629, 821 N.E.2d 180, 183 (Ohio 2004). "In order to determine that intent, a court must first look at the words of the statute itself." *Id.* "Courts do not have the authority to engage in an interpretation of a statute that would 'rewrite the statute beyond what its literal words will support' or that would add words to the statute." *Nowak*, 414 B.R. at 276 (quoting *State ex rel. Fenley v. Ohio Historical Soc'y*, 64 Ohio St.3d 509, 597 N.E.2d 120, 122–23 (Ohio 1992)).

### 3. Application of Ohio Law

The Trustees have woven their arguments based on Ohio law into a knot of nearly Gordian proportions. Unwinding the knot will be a somewhat lengthy, intricate process. Lest the reader get caught in the strands as the knot unwinds, the Court will preface its analysis with a synopsis. In short—notwithstanding the fact that the Mortgagees' liens encumber equitable, rather than legal, interests (*i.e.*, the Debtors' equitable interests in the properties)—the Mortgagees must prevail because their mortgages were perfected by proper execution and recording under Ohio law.

#### a. The Grantors Conveyed Equitable Interests in the Properties to the Debtors.

 In applying Ohio law, the Court must first define the Debtors' rights under the deeds, which the Court is presuming for the purposes of summary judgment to be defective. The position initially taken by the Trustees with respect to each Debtor's interest in the real property is correct—a defectively executed deed conveys "an equitable interest in the property" to the grantee. *Basil v. Vincello*, 50 Ohio St.3d 185, 553 N.E.2d 602, 606 (Ohio 1990).[11] In *Basil*, Phillip Vincello and Robert Teague, the owners of both the legal and equitable interests in real property, attempted to convey ownership of the property to Albert D. Perrico and Robert Slowey by a quitclaim deed that was later determined by the trial court to have been defectively executed. *See Id.* at 606. According to the Ohio Supreme Court, "be-

---

11. Prior to May 1, 2002 (*Basil* was issued before that date), Ohio law provided that "[t]he syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication." Rule 1(B) of the Supreme Court of the Ohio Rules for the Reporting of Opinions (2001). The Sixth Circuit, however, has held that "[a]lthough the Ohio Supreme Court lays down the law through the syllabus, [a court] may look to the body of the opinion for explication of that syllabus law." *Hostetler v. Consol. Rail Corp.*, 123 F.3d 387, 391 (6th Cir.1997). The quotation from *Basil*, therefore, is relevant even though it was not included in the court's syllabus. Effective May 1, 2002, the Ohio Supreme Court amended Rule 1 to provide that "[t]he law stated in a Supreme Court opinion is contained within its syllabus (if one is provided), and its text, including footnotes[,]" and "[i]f there is disharmony between the syllabus of an opinion and its text or footnotes, the syllabus controls." Rule 1(B)(1) & (2) (West 2009). Under the amended rule, the law in an Ohio Supreme Court opinion may be stated in the body of the opinion.

cause the deed was not executed in accordance with [Ohio Revised Code § ] 5301.01 and therefore was defective, legal title did not pass from Vincello and Teague to Perrico and Slowey." *Id.*[12] "At most then, it can be said that Perrico and Slowey have an equitable interest in the property still titled in Vincello and Teague that was created upon payment of consideration . . . or they have a cause of action for breach of contract arising when the defective deed was executed. . . ." *Id.* The rule applied in *Basil*—that a defectively executed deed provides the grantee with an equitable interest in the property—has long been the rule of law in Ohio. *See White v. Denman,* 1 Ohio St. 110, 112 (Ohio 1853) ("[Under Ohio law], a specific equitable interest in real estate [is created] by a deed so defectively executed as not to pass the legal estate . . ."). Thus, even if the deeds are defective, the Grantors conveyed, and the Debtors received, equitable interests in the properties.

### b. The Debtors Granted Mortgages on Their Equitable Interests in the Properties.

 Next, the Court must determine the Debtors' ability—which the Trustees have questioned—to grant mortgages on their equitable interests in the properties. There is no provision of the Ohio Revised Code that prohibits owners of interests in real property—whether the interests arose via defective deeds or otherwise—to grant mortgages on the property merely because their interests in the property are equitable. To the contrary, under Ohio law, persons such as the Debtors who hold equitable interests in real property may grant mortgages on the property even if they do not hold the legal title. *See Albright v. Meredith,* 58 Ohio St. 194, 50 N.E. 719, 719 (syllabus ¶ 1) (Ohio 1898) ("In order to support a mortgage, it is not necessary that the mortgagor shall be the absolute owner of the property mortgaged."). In other words, "[i]t is not necessary that the mortgagor shall have the entire title [because] [a] limited or special interest in property is sufficient to support a mortgage of it." *Id.* at 719. *See also Wright v. Franklin Bank,* 59 Ohio St. 80, 51 N.E. 876, 876 (syllabus ¶ 3) (Ohio 1898) ("A mortgage upon an estate, or any interest therein, *legal or equitable,* to be valid as against third persons, must be signed, acknowledged, witnessed, and recorded . . . ." (emphasis added)); *In re Willingham,* 139 B.R. 670, 673 (Bankr.N.D.Ohio 1991) (holding that the owner of an equitable interest in property in the form of a land contract can grant a mortgage on that interest under Ohio law). The Debtors, therefore, had the ability to grant mortgages on their equitable interests in the properties.

### c. It Is Unclear Under Ohio Law Whether a Mortgage Encumbering an Equitable Interest Is an Equitable Mortgage or a Legal Mortgage on an Equitable Interest.

 The Trustees contend that a mortgage on an equitable interest is an equita-

---

**12.** Ohio Revised Code § 5301.01(A) states:

A deed, mortgage, land contract . . . or lease of any interest in real property and a memorandum of trust . . . shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease or shall be signed by the trustee in the case of a memorandum of trust. The signing shall be acknowledged by the grantor, mortgagor, vendor, or les-

sor, or by the trustee, before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgment and subscribe the official's name to the certificate of the acknowledgment.

Ohio Rev.Code Ann. § 5301.01(A) (West 2010).

ble mortgage. The Mortgagees disagree, arguing that a mortgage is an equitable mortgage if it was defectively executed or unrecorded, but that a properly executed and recorded mortgage on an equitable interest is a legal mortgage. As discussed below, it does not matter who is right on this issue because, whether the Mortgagees' interests are legal or equitable, those interests can be and were perfected through properly executed and recorded mortgages under Ohio law. The Court, however, notes that it is not clear which party has the better argument on the legal/equitable mortgage issue.

In support of their position, the Trustees rely on *Allemania Loan & Bldg. Co. No. 2 v. Frantzreb*, 56 Ohio St. 493, 47 N.E. 497 (Ohio 1897). In *Allemania*, a company that owned real property agreed with a Jacob Frantzreb that he could have possession of the property and that the company would convey the legal title to him after he made certain required installment payments. Frantzreb defaulted on his obligation to make the payments, and the company commenced a lawsuit seeking to sell the property. After the lawsuit was commenced, Frantzreb granted mortgages on the property. The mortgagees were joined as defendants and sought to be paid on their claims against Frantzreb out of the proceeds of the sale. The Ohio Supreme Court held that the company with the legal title had priority over the mortgagees:

> It is true, as contended by counsel for defendants, that the mortgages were executed according to law. But it does not follow that, as against the company holding the legal title, they created legal liens. Since the mortgagor has never held the legal title, the mortgages operated only to create a lien upon his equitable interest. The controversy is between the company and the mortgagees,

and the superiority of right incident to the legal title is with the former.

*Id.* at 498. In other words, in *Allemania* the Ohio Supreme Court held that properly executed mortgages did not create legal liens against the owner of the legal title where that owner had not received all of the payments due it under a land installment contract. In a similar decision on which the Trustees rely, *Thornton v. Guckiean & Co.*, 77 Ohio App.3d 794, 603 N.E.2d 1066 (Ohio Ct.App.1991), an Ohio appeals court relied on *Allemania* for the proposition that "[w]here an individual who has contracted to purchase real property mortgages the property before actually receiving legal title, the mortgage does not create a legal lien but operates only to create a lien upon the mortgagor's equitable interest *and is therefore an equitable mortgage.*" *Thornton*, 603 N.E.2d at 1069 (emphasis added); *see also JDP Partners v. Denis L. Back & Assocs., Inc.*, 1995 WL 577548 at *2 (Ohio Ct.App. Sept.29, 1995). Thus, following *Allemania*, Ohio's intermediate appellate courts have sometimes described mortgages on equitable interests arising under land installment contracts as equitable mortgages. *See also Coe v. Columbus, Piqua & Ind. R.R. Co.*, 10 Ohio St. 372, 390–91 (Ohio 1859) ("[U]nder the construction of our registry laws, it is quite clear that a mortgage of lands to be afterward acquired, being a mere contract to convey such lands as a security, or, as it has been termed, an equitable mortgage, can have no validity against third persons who acquire legal interests in, or liens upon, the property. The legal rights of such persons can not be displaced at the instance of the holder of a prior unrecorded mortgage, or contract for a mortgage . . . .") (internal quotation marks omitted). None of these decisions involved a mortgage granted by a person who held the equitable interest in property via a defective deed. The Court does not find in

these decisions a definitive basis for holding that owners of equitable interests in real property who obtain those interests via defective deeds cannot grant legal mortgages on their equitable interests as against subsequent purchasers. On the other hand, the Court has no basis under Ohio law for holding to the contrary. Again, however, the Court need not decide the issue because it does not affect the outcome of these adversary proceedings.

### d. The Mortgagees' Interests Were Perfected Through Properly Executed and Recorded Mortgages.

The next issue is perfection. "Ohio has two different systems for perfecting interests in real property: the general (or traditional) recording laws and the land registration laws (also referred to as the Torrens System)." *Bavely v. Huntington Nat'l Bank (In re Cowan)*, 273 B.R. 98, 102 (6th Cir. BAP 2002), *aff'd*, 70 Fed. Appx. 797 (6th Cir.2003) (unpublished). Mortgages on real estate governed by the traditional system are perfected in Ohio by proper recording. *See id.* ("If land is governed by the traditional system, a properly executed mortgage must be filed with the appropriate county recorder's office in order to create a perfected interest in the property." (citing Ohio Rev.Code §§ 5301.23 [13] and 5301.25)); *see also First Fed. Sav. & Loan Ass'n of Galion v. Hayes*, 42 Ohio App.3d 89, 536 N.E.2d 655, 657 (Ohio Ct.App.1987) ("It is one thing to possess a lien; it is quite another to perfect the lien. Thus, for example, a lien is created by the execution of a real property mortgage; however, that lien is not per-

fected *vis-a-vis* other claimants until it is properly recorded with the recorder of the county in which the land is situated."). All of the mortgages at issue in these adversary proceedings are governed by the traditional system and thus are perfected by recording.

As discussed above, it is unclear whether the Trustees' position that a mortgage on an equitable interest is an equitable mortgage is correct under Ohio law. Even if the position is correct, however, it would not win the day for the Trustees because an equitable interest can be recorded and perfected under Ohio law. In support of their argument to the contrary, the Trustees rely on *Churchill v. Little*, 23 Ohio St. 301, 307 (Ohio 1872), in which the Ohio Supreme Court interpreted an Ohio statute that provided for the execution and recording of instruments by which property was "conveyed or otherwise affected or incumbered *in law*." *Id.* (internal quotation marks omitted) (emphasis in original). Given the language of that statute—which expressly limited its application to legal interests—the Ohio Supreme Court held that the recording act then in force did not permit the recording of equitable interests. *See id.* at 309. The Ohio Supreme Court contrasted Ohio's statute with that of other states that permitted the recording of all instruments relating to land, including one statutory provision in particular that "speaks of any writing in the nature of a mortgage, and those words may reach to any agreement creating an equitable incumbrance." *Id.* (internal quotation marks omitted).

---

**13.** Ohio Revised Code § 5301.23(A) states:

All properly executed mortgages shall be recorded in the office of the county recorder of the county in which the mortgaged premises are situated and shall take effect at the time they are delivered to the recorder for record. If two or more mortgages

pertaining to the same premises are presented for record on the same day, they shall take effect in the order of their presentation. The first mortgage presented shall be the first recorded, and the first mortgage recorded shall have preference.

Ohio Rev.Code Ann. § 5301.23(A).

The Ohio statute prohibiting the recording of equitable interests that the Ohio Supreme Court applied in *Churchill* was enacted in 1831. While controlling Ohio decisional law is often venerable,[14] Ohio statutory law governing the recording of equitable interests has changed in important ways since 1831. In fact, Ohio law has provided for the recording of equitable interest in real property since 1887. *See Wright*, 51 N.E. at 878 ("To make the statutes as to real estate, and all interests therein, consistent, the general assembly, in 1887, so amended section 4106, Rev. St., as to require deeds and mortgages *of any estate or interest in real property* to be signed by the grantor or mortgagor, and acknowledged before a proper officer ... and to be recorded in the office of the recorder of the county." (emphasis added)); *Wright v. Youtsey*, 1898 WL 1441 at *6 (Ohio Com.Pl.1898) ("[I]t is contended ... that [the] interest ... is but an equitable interest and not a legal estate, and as such not subject to the provisions of [the] Rev. Stat., that the asserted liens can not rise higher in their nature than, the estate upon which they are asserted and hence are all equitable liens and must relatively be determined according to rules of equity and not of law.... The language of sec. 4106, Rev. Stat., is broader than the limitations counsel would seek to place upon it. 'A deed, mortgage or lease of *any* estate or interest in real property.' ").[15]

Likewise, the current version of the Ohio Revised Code in no way restricts the application of Ohio's recording act to legal interests. As noted above, Ohio Revised Code § 5301.01 governs the execution and acknowledgment of any "deed, mortgage, land contract ... or lease *of any interest in real property.*" Ohio Rev.Code Ann. § 5301.01 (emphasis added). In addition, Ohio Revised Code § 5301.25 states:

> All deeds, land contracts ... and instruments of writing properly executed for the conveyance or encumbrances of lands, tenements, or hereditaments ... shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument.

Ohio Rev.Code Ann. § 5301.25(A). Thus, there is nothing in § 5301.01, § 5301.25(A) or any other provision of the Ohio Revised Code that suggests that properly executed mortgages on equitable interests are ineligible to be perfected by proper recording.

---

**14.** *See Drown v. Nat'l City Bank (In re Ingersoll)*, 403 B.R. 505, 513 (Bankr.S.D.Ohio 2009) (relying in part on an 1886 Ohio Supreme Court decision to grant summary judgment for defendants on trustee's motion to avoid mortgage as defectively executed), *aff'd*, 420 B.R. 414 (6th Cir. BAP 2009); *Hardesty v. Citifinancial, Inc. (In re Roberts)*, 402 B.R. 808, 814 (Bankr.S.D.Ohio 2009) (relying in part on an 1827 Ohio Supreme Court decision to grant summary judgment for defendants on trustee's motion to avoid mortgage as defectively executed), *aff'd*, 419 B.R. 20 (6th Cir. BAP 2009).

**15.** Section 4106 of the Ohio Revised Statutes (passed Mar. 19, 1887) governed the execution and acknowledgment of any "deed, mortgage, or lease of any estate or interest in real property...." 2 Bates Ann. Revised Statutes 2282 (W.H. Anderson Co. 1905). The annotations to section 4106 state that "[t]he section to which this note is appended has taken the place of the act of 1831, which is repealed in this revision." *Id.* at 2282 n. The 1831 statute, Chapter 1365, Section 1 (passed Feb. 22, 1831), governed the execution and acknowledgment of "any deed, mortgage or other instrument of writing, by which any land, tenement or hereditament, shall be conveyed, or otherwise affected or incumbered in law...." 3 Curwen's Revised Statutes 2448 (Curwen 1854).

*See R.W.I. Supply Co. v. Santangelo,* 1992 WL 233191 at *3 (Ohio Ct.App. Sept. 11, 1992) ("[R]ecording [pursuant to Ohio Revised Code § 5301.25] gives constructive notice ... of ... equitable interests."); *see also Wright,* 51 N.E. at 876 (syllabus ¶ 3) ("A mortgage upon an estate, or any interest therein, *legal or equitable,* to be valid as against third persons, must be signed, acknowledged, witnessed, and recorded ...." (emphasis added)). In Ohio, therefore, the recipients of mortgages on equitable interests may record and thereby perfect those mortgages.

### e. The Trustees Cannot Prevail as Unsatisfied Execution Creditors or Holders of Judicial Liens.

 The general rule in Ohio with respect to judicial lien holders is as follows:

[T]he interest of a person to whom a judgment debtor has conveyed real estate before the attachment of the judgment or execution lien is preferred to the interest of the judgment creditor, unless such priority is affected by the provisions of recording statutes, or statutes relating to fraudulent conveyances, or the conveyance is void for other reasons, or the grantee is estopped from asserting his claim as against the judgment creditors.

*Basil,* 553 N.E.2d at 607 (quoting *Univ. Assoc. v. Sterling Fin. Co.,* 37 Ohio App.2d 17, 305 N.E.2d 924, 925 (Ohio Ct.App. 1973)). Here, each of the Debtors granted a mortgage on his or her interest in real estate and did so before any judgment lien of the Trustees arose by operation of the Bankruptcy Code. Under *Basil,* therefore, the interests of the Mortgagees have priority over the interests of the Trustees as judgment creditors. None of the exceptions identified in *Basil* applies here. The Mortgagees perfected their interests, so nothing in Ohio's recording statutes provides a basis for the Trustees, in their capacities as judicial lien holders, to avoid the mortgages. Nothing suggests that the granting of the mortgages perpetrated a fraud on the Trustees, constituted fraudulent conveyances or provided any equitable basis for the Trustees to defeat the Mortgagees' interests. The Trustees, therefore, cannot avoid the mortgages in their capacities as judicial lien holders under § 544(a)(1).

 Under § 544(a)(2), the trustee has the rights and powers of an unsatisfied execution creditor. "An execution may be returned wholly unsatisfied after a levy has been made ... for many reasons, as where the property is covered by mortgage...." *Wild v. Apple,* 1927 WL 2727 at *1 (Ohio Ct.App. May 23, 1927). Under Ohio law, a creditor obtaining such an execution clearly could not use it to avoid or otherwise obtain priority over a perfected mortgage that caused the execution to be returned unsatisfied in the first place. The Trustees, therefore, cannot avoid the mortgages in their capacities as execution creditors under § 544(a)(2).

### f. The Trustees Cannot Prevail as Bona Fide Purchasers.

 Under Ohio law, "a 'bona fide purchaser' is one who acquires legal title to real estate for valuable consideration, in good faith, and without knowledge or notice of another's equitable interest in that property." *Bergholtz Coal Holding Co. v. Dunning,* 2006 WL 1816290 at *5 (Ohio Ct.App. June 30, 2006) (citing *Shaker Corlett Land Co. v. City of Cleveland,* 139 Ohio St. 536, 41 N.E.2d 243, 244 (syllabus ¶ 3) (Ohio 1942)). Thus, no one, including the Trustees, could avoid the mortgages based on bona fide purchaser status if the recording of the mortgages provided constructive notice of the Mortgagees' encumbrances on the Debtors' equitable interests in the properties. Each of the mortgages

was properly executed and recorded in the appropriate place. As discussed above, such recording provides constructive notice of the Mortgagees' liens. The Trustees, therefore, had constructive notice of the Mortgagees' interests in the Debtors' properties.

### i. The Trustees' Equitable–Mortgage Argument

The Trustees contend that mortgages on equitable interests are equitable mortgages. *See* Doc. 41 in Adv. Pro. No. 08–2085. Even if the Court were to accept the validity of this premise, it does not follow that the Trustees must prevail. For the reasons explained above, the Trustees had constructive notice of the Mortgagees' interests and therefore cannot avoid or otherwise negate those interests.

In support of their equitable-mortgage argument, the Trustees rely on the familiar aphorism that a bird that walks, swims and quacks like a duck must be a duck, *see id.* at 7 n. 3, concluding that because some equitable mortgages (defectively executed mortgages) do not provide constructive notice, anything that might be called an equitable mortgage does not provide constructive notice. But this is a non sequitur. The Court must look to "the true substance of what is involved, *i.e.*, to put it as a variation on [the Trustees'] popular theme—if something does not look like a duck, and does not quack like a duck, calling it a duck does not make it one." *In re Am. Tissue, Inc.*, 331 B.R. 169, 175 (Bankr. D.Del.2005). Even if a mortgage on an equitable interest is properly denominated an equitable mortgage, such a mortgage can, as discussed above, be properly executed and recorded in the real estate records and thereby provide constructive notice to a later purchaser. *Cf. Corzin v. Decker, Vonau, Sybert & Lackey, Co. (In re Simms Constr. Servs. Co.)*, 311 B.R.

479, 488 (6th Cir. BAP 2004) ("Once the existence of an attorney's charging lien is established, it is treated as a lien for all purposes under the Bankruptcy Code. It does not matter whether the lien is characterized as 'legal' or 'equitable.' ").

The Trustees attempt to buttress their equitable-mortgage argument by citing inapposite decisions rendered by Ohio and bankruptcy courts. For example, they rely on *Bloom v. Noggle*, 4 Ohio St. 45 (Ohio 1854), even though that decision involved an equitable interest granted by an instrument that had not been recorded. *See Bloom*, 4 Ohio St. at 54 ("[L]egal rights ... can not be displaced, at the instance of the holder of a prior unrecorded mortgage, or contract for a mortgage, although acquired with notice of such mortgage, or of the existence of such contract.... *Until entered for record*, they have no effect either at law or in equity against third persons ...." (emphasis added)). The Trustees also rely on *Hume v. Dixon*, 37 Ohio St. 66 (Ohio 1881). There, however, the equitable interest at issue was an unrecorded vendor's lien. The court expressly noted that the losing party had relied on an unrecorded interest. "Instead of taking a mortgage and placing his lien upon record, so that all might know of it, it was kept secret." *Hume*, 37 Ohio St. at 70. "A vendor relying upon this lien ought to reduce it to a mortgage, so as to give notice of it to the world.... [R]eserving to himself a secret lien for the unpaid purchase-money, is not in keeping with the intention of our recording acts...." *Id.* at 71 (internal quotation marks omitted). *Langmede v. Weaver*, 65 Ohio St. 17, 60 N.E. 992 (Ohio 1901) and *Strang v. Beach*, 11 Ohio St. 283 (Ohio 1860), both of which involved defectively executed mortgages and both of which are cited by the Trustees, are along the same lines. These adversary proceedings, however, do not involve unrecorded or defectively executed

mortgages. As the Sixth Circuit has stated, "[i]t is instructive to compare this case with those in which Ohio courts have set aside mortgages as inadequate to give constructive notice ... [and] have refused to allow a recorded mortgage to give constructive notice when the mortgage has been executed in violation of a statute." *Argent Mortgage Co. v. Drown (In re Bunn)*, 578 F.3d 487, 490 (6th Cir.2009). That is not the case here.

From among the bankruptcy courts, the Trustees cite *Hunter v. Bank of New York (In re Anderson)*, 266 B.R. 128 (Bankr. N.D.Ohio 2001), for the proposition that "equitable liens are applied sparingly against innocent third-parties who acquire an interest in the property...." *Anderson*, 266 B.R. at 134. *Anderson*, however, involved a situation where the mortgage itself was defectively executed and thus not entitled to be recorded; the bankruptcy court expressly noted that the recording of a mortgage not entitled to be recorded does not provide constructive notice to a trustee. *Id.* at 135 ("[T]he Court holds that, as a matter of law, an equitable lien created on account of an improperly executed or unrecorded mortgage will not defeat a bankruptcy trustee's interest in the debtor's property for purposes of 11 U.S.C. § 544(a)(3)."). Similarly, the Trustees rely on *Gibson*, for the proposition that "equitable liens are treated with disfavor under bankruptcy law and cannot survive attack by a Chapter 7 Trustee because by definition an equitable lien is unperfected." *Gibson*, 395 B.R. at 58. What the Trustees fail to point out, however, is that *Gibson* and the decisions on which it relied involved unrecorded mortgages. *See id.* By contrast, the Trustees do not allege that the mortgages here failed to meet the mortgage-execution requirements, nor do they allege that the mortgages were not recorded in the place where a mortgage granted by each particular debtor should have been recorded. The mortgages, "being duly recorded, w[ere] notice to all the world...." *Paine v. French*, 4 Ohio 318, 321 (Ohio 1831). Accordingly, the mortgages provided the Trustees with constructive notice of the Mortgagees' interests.

Moreover, if, as here, "such a recorded mortgage would give constructive notice to third parties under Ohio law, then the bankruptcy trustee cannot set aside the mortgage." *Bunn*, 578 F.3d at 488. In *Bunn*, which dealt with the issue of a mortgage that did not include a legal description of the real property, the Sixth Circuit noted that "[n]o Ohio case directly suggests that the Ohio courts would set aside an otherwise valid mortgage in favor of a third party purchaser in these circumstances." *Id.* at 490. Likewise, the Trustees here have presented no authority for the proposition that, under Ohio law, the recipient of an equitable interest by way of a defective deed could not grant a mortgage on that interest or that the mortgage could not be perfected; instead, they rely on the plethora of inapposite decisions discussed above in which the mortgage itself was not recorded or was defectively executed and thus not entitled to be recorded. The mortgages at issue here were executed and recorded in accordance with the Ohio Revised Code. The Trustees' equitable-mortgage argument, therefore, is unavailing.[16]

---

16. It appears to be the case in Ohio that "[u]nder [an] equitable mortgage, [the mortgagees] obtain[ ] a right to foreclose upon the mortgagors' equitable interest if the mortgagors were in default." *Thornton*, 603 N.E.2d at 1069. The decision cited by the Trustees for the proposition that "[n]ot even a properly recorded equitable interest in real property is subject to a foreclosure action[,]" *Staskey v. Staskey*, 2000 WL 1902212 at *4 (Ohio Ct.

### ii. The Trustees' Chain–of–Title Argument

■ In their post-hearing briefs, the Trustees made one final argument for why they did not have constructive notice of the Mortgagees' interests despite the recording of the mortgages. The Trustees' chain-of-title argument is as follows:

> The underlying assumption in a title search is that one does not search a person's name in the index until that person receives title.... Ohio law provides that an encumbrance *must* be recorded within the purchaser's chain of title in order for it to provide constructive notice to a subsequent bona fide purchaser....
>
> The effect of a defective deed is that the link in the chain of title is broken, and anything that appears in the record *after* the missing link is outside the chain of title. Once the defective deed is ignored for purposes of constructive notice, one cannot be charged with constructive notice of the mortgage that "springs" from the defective deed....
>
> [O]nce the defective deed upon which the mortgage is based is regarded a nullity, one could not be charged with constructive notice of any transaction, i.e., a mortgage, based on the defective deed.

*See* Doc. 41 in Adv. Pro. No. 08–2085 at 11, 15–16.

The Trustees concede that they were "unable to find any Ohio case directly addressing the issue [of] whether a recorded mortgage from a grantee of a defective deed is within the chain of title so as to provide constructive notice." *Id.* at 11. The lack of any precedent from the courts of Ohio in support of the Trustees' chain-of-title argument would be reason enough to reject it. *See Bunn,* 578 F.3d at 490. But there is an even more compelling reason to reject the argument here. The Trustees' initial premise in support of the argument—that when doing a title search one never need search under a person's name until that person receives title—is wrong as a matter of Ohio law.

Although decisions bearing on mortgage-avoidance issues in Ohio are frequently of nineteenth century vintage, the Court need look no further back in time than *Wayne Building & Loan Co. v. Yarborough,* 11 Ohio St.2d 195, 228 N.E.2d 841 (Ohio 1967), a decision on which the Mortgagees rely, to reach the conclusion that the Trustees' chain-of-title argument is incorrect. In *Yarborough,* a builder named Robert Yarborough entered into a contract with Donald and Gloria Lantz for the sale of a particular lot in a residential subdivision and the construction of a residence on the lot. The Lantzes paid a portion of the purchase price. Yarborough thereafter obtained a deed to the lot from the developer of the subdivision, Sauter Development Company ("Sauter"), in exchange for

---

App. Dec. 29, 2000), relied on Ohio Revised Code § 2329.01 and was decided in the context of a foreclosure action initiated following a judgment obtained on a debt. This fact is relevant because Ohio Revised Code § 2329.01 provides that "[*l*]ands and tenements, including vested legal interests therein, permanent leasehold estates renewable forever, and goods and chattels, not exempt by law, shall be subject to the payment of debts, and liable to be taken on execution and sold...." Ohio Rev.Code Ann. § 2329.01

(West 2010). Based on this section, the Ohio Supreme Court has held that equitable interests in real property cannot be levied upon and sold under execution. *Basil,* 553 N.E.2d at 608. Given its apparent purpose, it does not appear that § 2329.01 would prohibit the holder of a consensual lien on an equitable interest from foreclosing on that interest. That question, however, is not before the Court, and the Court therefore does not decide it.

his partial cash payment, promissory note and mortgage on the lot. The deed from Sauter to Yarborough and his mortgage to Sauter were not promptly recorded. Before those documents were recorded, Yarborough obtained a construction loan secured by a mortgage on the residential lot from Wayne Building & Loan Company ("Wayne"), which promptly recorded its mortgage. Thereafter, work commenced on the house, and mechanics' liens attached to the lot. After the mechanics' liens attached, Sauter recorded its mortgage from Yarborough as well as its deed to Yarborough. The mortgage held by Wayne was then refiled. *See Yarborough,* 228 N.E.2d at 844.

Wayne filed an action for foreclosure and marshalling of liens, and the trial court ordered the sale of the property. On appeal, the Ohio court of appeals ranked the relative priority of the liens in the following order: (1) Wayne's mortgage lien, (2) the mechanics' liens, (3) Sauter's mortgage lien and (4) the Lantzes' vendees' lien for their purchase price. The Lantzes, Sauter and a mechanic's lienor, The Falls Lumber Company ("Falls Lumber"), appealed to the Ohio Supreme Court. *See id.* at 845. Falls Lumber challenged Wayne's mortgage on several grounds. The Ohio Supreme Court reversed the court of appeals on a ground that is not relevant to the outcome of these adversary proceedings. In doing so, however, the Ohio Supreme Court also addressed an argument put forth by Falls Lumber that is relevant here. Falls Lumber argued that it did not have constructive notice of the version of the Wayne mortgage that was recorded prior to the time that its mechanic's lien attached because the mortgage was recorded before the deed to Yarborough was recorded and therefore was outside of the chain of title of Falls Lumber. *Id.* at 852. Assuming for the sake of its decision that mechanics'

lienors are purchasers within the meaning of Ohio Revised Code § 5301.25, the Ohio Supreme Court rejected the chain-of-title argument:

> [T]he mechanics' lienors, even if purchasers, are not purchasers from one who appears of record to have the title, nor is there any question herein of unrecorded conveyances by the common grantor of all the parties (Yarborough). . . .

> In the instant cases, it was specifically found that Yarborough contracted for labor and materials with the mechanics' lienors as owner, and they, therefore, clearly claim through him. If they had checked [Yarborough's] title, the first thing they would have found would have been his mortgage to Wayne. *They would not have found a deed to Yarborough, but surely that would not privilege them to ignore the mortgage.*

> . . . *In the instant cases examination of the record by those knowing of and claiming through Yarborough would have furnished actual notice of the Wayne mortgage and, therefore, the record thereof is constructive notice as to such parties.*

*Id.* at 852–54 (citations omitted) (emphasis added).

As discussed previously, as parties claiming to be bona fide purchasers under § 544(a)(3), the Trustees are deemed to have conducted title searches. In addition, under § 544(a)(3), the Trustees are hypothetical purchasers of real property "from" the Debtors. 11 U.S.C. § 544(a)(3). *See also Nolan,* 383 B.R. at 396 ("The key is whether . . . [a] purchaser claiming *through* the debtor would, under local law, acquire rights to the property superior to the interest of the prior transferee." (quoting 2 David G. Epstein, Steve H. Nickles & James J. White, *Bankruptcy* § 6–61, at

116–17 (West 1992))). Under Ohio law, the Debtors granted mortgages while lacking legal title; moreover, defectively executed real-estate instruments are treated as though they had not been filed. *See Rieser v. Fifth Third Mortgage Co. (In re Wahl)*, 407 B.R. 883, 888 (Bankr.S.D.Ohio 2009). As hypothetical purchasers from each of the Debtors, therefore, the Trustees "are not purchasers from one who appears of record to have the title...." *Yarborough*, 228 N.E.2d at 852. Under *Yarborough*, the Trustees would be deem to have checked under the Debtors' names in the real estate records and to have found the properly executed and recorded mortgages. The Trustees would not be deemed to have found the presumably defective deeds from the Grantors to the Debtors, "but surely that would not privilege them to ignore the mortgage[s]." *Id.* at 853. Under *Yarborough*, therefore, the Trustees have constructive notice of the mortgages despite any defects in the deeds.

### VI. Conclusion

Despite all of the Trustees' arguments to the contrary, the Court must conclude that the Trustees had constructive notice of the Mortgagees' interests in the various parcels of real property. Accordingly, the Trustees' status as hypothetical purchasers from the Debtors does not provide a basis for avoidance of the mortgages. For the foregoing reasons, the Court **GRANTS** summary judgment in favor of the Mortgagees and against the Trustees on the Defective Deed Issue.

**IT IS SO ORDERED.**